Case 2:23-cv-00040-SPC-KCD   Document 4   Filed 01/20/23   Page 1 of 54 PageID 87

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA
CIVIL DIVISION

LINDA KAZAK and KAZAK REAL
ESTATE, LLC d/b/a KAZAK REAL
ESTATE,

      Plaintiffs,

v.

TRUIST BANK f/k/a BRANCH BANKING
AND TRUST COMPANY,

      Defendant.

_____/

Case No.:_____

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW, Plaintiffs, LINDA KAZAK and LINDA KAZAK REAL ESTATE, LLC,

by and through their undersigned counsel, and pursuant to the Florida Rules of Civil Procedure,

and file this Verified Complaint and Demand for Jury Trial against Defendant, TRUIST BANK

f/k/a BRANCH BANKING AND TRUST COMPANY, and in support thereof states as follows:

### Venue & Jurisdiction

1.  Plaintiff, LINDA KAZAK ("Kazak"), is a resident of Lee County, Florida, and conducts
    business in Lee County Florida as a licensed Real Estate Broker.

2.  Plaintiff, KAZAK REAL ESTATE, LLC ("Kazak Real Estate"), is an active Florida
    Limited Liability Company and conducts business in Lee County, Florida

3.  Kazak conducts business in Lee County, Florida as a principal of Kazak Real Estate
    (collectively "Plaintiffs").

4.  Defendant TRUIST BANK f/k/a BRANCH BANKING AND TRUST COMPANY
    ("Defendant" or "Truist"), is a Foreign Profit Corporation and conducts business in Lee
    County, Florida.

5.      Venue is proper in this Court as all acts giving rise to this claim have occurred in Lee County, Florida.

6.      Defendant is subject to personal jurisdiction in Lee County.

7.      The damages in this case presently exceed $30,000.

8.      Plaintiffs satisfied all actions precedent to bringing this action.

### **Common Allegations**

9.      This case involves the acts and omissions of Defendant in connection with a fraudulent enterprise.

10.      Plaintiffs were legacy account holders of BRANCH BANKING AND TRUST COMPANY's ("BB&T") accounts that were absorbed with the SunTrust and BB&T merger in ▇▇▇ that created Truist.

11.      At the time of the account issues herein, Plaintiffs never entered into any prior account agreements with Truist and only executed account agreements with BB&T in Lee County.

12.      Plaintiffs were the victims of a cybercrime fraud enterprise, which included Defendant, which allowed third parties to gain control of their accounts and deplete the account contents in amounts exceeding $112,000.00.

13.      Plaintiffs made immediate contact to Truist to report the fraud, at a time when the accounts could be frozen and the fraudulent wire transfers could be terminated/recaptured.

14.      However, despite this notice to Truist within an hour of the fraud, Truist did nothing and did not follow its own fraud response protocols.

15.      On January 18, 2022 at 11:40 a.m., Kazak received a call from BBT's consumer fraud division at 1-800-226-5228.

16.      The call was disconnected, but Kazak called back to confirm that it was a legitimate number (it was in fact a Truist number).

Kazak v. Truist Bank
Verified Complaint

17. The fraud department called back at 11:42 a.m. and the call lasted for 48 minutes.

18. During this time, Kazak was told that there were fraudulent charges on her account: $.99 and $127.43 from Target and $355.15 from Walmart.

19. The representative stated that the charges were declined but BB&T needed to lock the account and change the password.

20. Kazak did not give any identification information but represented that she needed to change the password; the representative sent several one-time passcodes to her phone during this 48-minute call.

21. When finished, the fraud department representative gave Kazak a reference number of BBT01182275.

22. Immediately after hanging up, Kazak received an email from Truist at 12:13 p.m. stating that Plaintiffs were enrolled in wire transfer services.

23. Plaintiffs did not initiate any wire transfers.

24. Kazak attempted to call the number listed on the email (844-487-8478).

25. Kazak was put on hold for almost 15 minutes.

26. Due to the long hold time, Kazak hung up and called a local branch.

27. During her call to the local branch, Kazak spoke with relationship manager, Ashley DiMirco ("Ms. DiMirco"), and explained the situation.

28. During the call, Kazak told Ms. DiMirco to lock her accounts immediately and terminate all wire transfers.

29. Ms. DiMirco agreed to lock the accounts immediately and terminate the wire transfers.

30. Ms. DiMirco stated that she would immediately contact the fraud department and call Kazak back.

31. Ms. DiMirco did not follow through with her promises.

Page 3 of 22

Kazak v. Truist Bank
Verified Complaint

32. Ms. DiMirco did not immediately lock the accounts.

33. Ms. DiMirco did not immediately terminate the wire transfers.

34. Ms. DiMirco did not immediately contact the fraud department.

35. However, Ms. DiMirco did call Kazak back and informed her that the accounts were locked.

36. Kazak inquired about the wire transfers and Ms. DiMirco stated that Truist would refund the wires upon them posting to her account.

37. During this second telephone call with Ms. DiMirco, Kazak asked if they should call the fraud department.

38. Ms. DiMirco directed Kazak to the number on the back of the debit card.

39. Kazak called that number (though it was not the fraud department) and again explained the situation and asked to be transferred to the fraud department.

40. After another long wait, Kazak was informed that it was the Zelle fraud department and instructed Kazak to go to her local branch and open new accounts.

41. During that call, Kazak was also told that after 3-5 business days the money would be refunded.

42. Kazak complied with the Truist directive, calling the local branch to schedule an appointment, which was scheduled for January 19, 2022 at 9:00 a.m.

43. After 3 hours at the branch setting up new accounts, the Truist representatives stated that "all the money was refunded and placed back into her old accounts."

44. Thereafter, Ms. DiMirco confirmed that she transferred the money into Plaintiffs' new accounts.

45. On Thursday, January 20, 2022, Kazak set up the new banking accounts online and saw that the money was transferred back out of her account.

Page 4 of 22

Kazak v. Truist Bank
Verified Complaint

46.   Kazak immediately called the local Truist branch and spoke with Truist representative, Ms. Peltier, who represented that she would call her back.

47.   Ms. Peltier never called Kazak back.

48.   On Friday, January 21, 2022, a representative from the Defendant's fraud department contacted Kazak and explained that they had ***just received*** the fraud case and would be investigating the matter further.

49.   Upon Kazak's request for the funds, the fraud representative represented that neither FDIC regulations nor Regulation E cover wire fraud, but they would try to get their money back.

50.   At every juncture Truist representatives failed Plaintiffs.

51.   Plaintiffs timely brought the issue to Truist at a time when the matter could be resolved, but the ineffectual response allowed the unauthorized wire transfer from Plaintiffs' accounts.

52.   Defendant failed to comply with Plaintiffs' stop payment requests.

53.   Defendant failed to timely initiate and complete reasonable error resolution investigations.

54.   Defendant lied to Plaintiffs relative to immediately locking the accounts, terminating the wire transfers, stopping payment requests, and immediately contacting the fraud department.

55.   As a result of Defendant's omissions, Plaintiffs have been damaged.

## Count I: Declaratory Judgment

56.   Plaintiffs adopt and reincorporate the allegations set forth in paragraphs 1-55, as if fully set forth herein.

57.   This is an action for declaratory relief against Defendant.

58.   There exists a bona fide dispute between Plaintiffs and Defendant.

59.   Plaintiffs are in doubt as to their rights under the account agreements and federal law.

Kazak v. Truist Bank
Verified Complaint

60. Plaintiffs had deposit/account agreements[1] ("Agreements") with Defendant's predecessor, BB&T.

61. Plaintiffs have a justiciable question as to the existence of their rights under the Agreements and federal law.

62. The declaration sought by Plaintiffs deal with a present, ascertained or ascertainable state of facts, or present controversy as to a state of facts, to-wit: the Agreements and federal law.

63. The declaration involves the rights of Plaintiffs and depends upon the facts herein or the law applicable to the facts herein.

64. Plaintiffs have a present interest in the subject matter.

65. The parties' antagonistic and adverse interests are all before the Court.

66. The relief sought is not merely giving of legal advice by the Court or the answer to questions propounded from curiosity.

67. There is a bona fide, actual, present practical need for the declaration.

68. There is a substantial likelihood that Plaintiffs will prevail on the merits.

69. Plaintiffs seek a determination on the rights and obligations of the parties relative to the Agreements and federal law.

70. As a proximate result of Defendant's actions, Plaintiffs continue to suffer irreparable harm for which monetary damages are inadequate.

---

[1] Plaintiffs are not in possession of the contract. The contract is in the possession of Defendant. As a matter of law, the pleader need not attach a copy of the contract, and "…where the instrument is not within the pleader's possession or control…such failure to attach should not be fatal to the cause." *Sachse v. Tampa Music Co*., 262 So. 2d 17 (Fla. 2nd DCA 1972) (citations omitted). Further, "…post pleading, pretrial discovery methods as depositions, request for admissions and interrogatories can be used by the plaintiff to show that there was a… contract between the defendant and another party." *Id.* (citation omitted).

Kazak v. Truist Bank
Verified Complaint

WHEREFORE, Plaintiffs demands a declaration of their rights by this Court and for such other and further relief as this Court deems equitable, proper, and just.

## Count II: Breach of Contract

71.  Plaintiffs adopt and reincorporate the allegations set forth in paragraphs 1-55, as if fully set forth herein.

72.  Plaintiffs and Defendant were parties to a written contract known Agreements.

73.  Plaintiffs had Agreements with Defendant's predecessor BB&T.

74.  The Agreements governed all matters among Plaintiffs and Defendant.

75.  Under these Agreements, Defendant has obligations to cancel pay requests made by Plaintiffs.

76.  Plaintiffs made cancel pay requests to Defendant as set forth herein.

77.  Defendant failed to comply with the cancel pay directives.

78.  As a result of Defendant's failure to comply with the cancel pay directives, Defendant has breached the Agreements with Plaintiffs.

79.  As a result of Defendant's breach, Plaintiffs have incurred profound damages, including the loss of the account balances.

WHEREFORE, Plaintiffs demand judgment in their favor, including the award of damages, attorneys' fees, court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

## Count III: Breach of the Contractual Obligation of Good Faith and Fair Dealing

80.  Plaintiffs adopt and reincorporate the allegations set forth in paragraphs 1-55 and 71-79, as if fully set forth herein.

81.  Plaintiffs and Defendant were parties to written contracts known as Agreements.

82.  Plaintiffs had Agreements with Defendant's predecessor BB&T.

Kazak v. Truist Bank
Verified Complaint

83.   The Agreements governed all matters among Plaintiffs and Defendant.

84.   Under the Agreements, Defendant had an obligation to cancel pay requests made by Plaintiffs.

85.   Plaintiffs made cancel pay requests to Defendant as set forth herein.

86.   Defendant promised to enact the cancel pay requests.

87.   Defendant failed to comply with the cancel pay directives.

88.   As a result of Defendants failure to comply with the cancel pay directives, Defendant breached the Agreements.

89.   As a result of the above, Defendant breached the contractual obligation of good faith and fair dealing to Plaintiffs.

90.   As a result of Defendant's breach, Plaintiffs incurred profound damages resulting from the loss of money from their accounts.

WHEREFORE, Plaintiffs demand judgment in their favor, including the award of damages, attorneys' fees, court costs, and for such other and further relief as this Court deems equitable, proper, and just.

## Count IV: Negligence

91.   Plaintiff adopts and reincorporates the allegations set forth in paragraphs 1-55, as if fully set forth herein.

92.   Plaintiffs brought the issues set forth herein to Defendant's representative, Ashley DiMirco, via a telephone call.

93.   During this call, Kazak instructed Ms. DiMirco to lock Plaintiffs' accounts immediately and to terminate all wire transfers.

94.   Ms. DiMirco agreed to lock the accounts immediately and terminate the wire transfers.

Kazak v. Truist Bank
Verified Complaint

95.  Ms. DiMirco stated that she would immediately contact the fraud department and call Kazak back.

96.  Ms. DiMirco did not follow through with her promises.

97.  Ms. DiMirco did not immediately lock the accounts.

98.  Ms. DiMirco did not immediately terminate the wire transfers.

99.  Ms. DiMirco did not immediately contact the fraud department.

100.  However, Ms. DiMirco did call Kazak back and informed her that the accounts were locked.

101.  Kazak inquired about the wire transfers and Ms. DiMirco stated that Truist would refund the wires upon them posting to her account.

102.  During this second telephone call with Ms. DiMirco, Kazak asked if they should call the fraud department.

103.  Ms. DiMirco directed Kazak to the number on the back of the debit card.

104.  Kazakl called that number (though it was not the fraud department) and again explained the situation and asked to be transferred to the fraud department.

105.  After another long wait, Kazak was informed that it was the Zelle fraud department and instructed Kazak to go to her local branch and open new accounts.

106.  During that call, Kazak was also told that after 3-5 business days the money would be refunded.

107.  Kazak complied with the Truist directive, calling the local branch to schedule an appointment, which was scheduled for January 19, 2022 at 9:00 a.m.

108.  After 3 hours at the branch setting up new accounts, the Truist representatives stated that "all the money was refunded and placed back into her old?? accounts."

Kazak v. Truist Bank
Verified Complaint

109. Thereafter, Ms. DiMirco confirmed that she transferred the money into Plaintiffs' new accounts.

110. On Thursday, January 20, 2022, Kazak set up the new banking accounts online and saw that the money was transferred back out of her account.

111. Kazak immediately called the local Truist branch and spoke with Truist representative, Ms. Peltier, who represented that she would call her back.

112. Ms. Peltier never called Kazak back.

113. On Friday, January 21, 2022, a representative from the Defendant's fraud department contacted Kazak and explained that they had just received the fraud case and would be investigating the matter further.

114. Upon Kazak's request for the funds, the fraud representative represented that neither FDIC regulations nor Regulation E cover wire fraud, but they would try to get their money back.

115. At every juncture Truist representatives failed Plaintiffs.

116. Plaintiffs timely brought the issue to Truist at a time when the matter could be resolved, but the ineffectual response allowed the unauthorized wire transfer from Plaintiffs' accounts.

117. Defendant failed to comply with Plaintiffs' stop payment requests.

118. Defendant failed to timely initiate and complete reasonable error resolution investigations.

119. Defendant lied to Plaintiffs relative to immediately locking the accounts, terminating the wire transfers, stopping payment requests, and immediately contacting the fraud department.

120. As a result of Defendant's omissions, Plaintiffs have been damaged.

121. Defendant, through its agents Ms. DiMirco and Ms. Peltier, had a duty to Plaintiffs to act with due care to address Plaintiffs' requests and concerns.

Kazak v. Truist Bank
Verified Complaint

122. Defendant breached that duty as set forth above by ignoring Kazak's stop payment directives, by not following through with its representations to terminate all wire transfers, and by not locking Plaintiffs' accounts as promised.

123. Defendant's actions and/or omissions caused Plaintiffs' damages.

124. Plaintiffs' damages, as a result of Defendant's negligence, include the loss of account funds, loss of business, and loss of business opportunities.

WHEREFORE, Plaintiffs demand judgment in their favor, including the award of damages, attorneys' fees,  court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

## Count V: Breach of Fiduciary Duty

125. Plaintiffs adopts and reincorporates the allegations set forth in paragraphs 1-55, as if fully set forth herein.

126. Defendant owed Plaintiffs a fiduciary duty under these facts.

127. Defendant entered into a banking relationship with Plaintiffs, with whom it has established a confidential or fiduciary relationship.

128. This transaction is one from which Defendant stands to benefit at the expense of the customer, Plaintiffs, relative to the recapture of funds, funds Defendant represented would be returned.

129. After learning about the fraud/wire transfer issue, Kazak called Defendant's local branch and spoke with relationship manager, Ashley DiMirco, and explained the situation.

130. During the call, Kazak instructed Ms. DiMirco to lock her accounts immediately and terminate all wire transfers.

131. Ms. DiMirco agreed to lock the accounts immediately and terminate the wire transfers.

Kazak v. Truist Bank
Verified Complaint

132. Ms. DiMirco stated that she would immediately contact the fraud department and call Kazak back.

133. Ms. DiMirco did not follow through with her promises.

134. Ms. DiMirco did not immediately lock the accounts.

135. Ms. DiMirco did not immediately terminate the wire transfers.

136. Ms. DiMirco did not immediately contact the fraud department.

137. However, Ms. DiMirco did call Kazak back and informed her that the accounts were locked.

138. Kazak inquired about the wire transfers and Ms. DiMirco stated that Truist would refund the wires upon them posting to her account.

139. During this second telephone call with Ms. DiMirco, Kazak asked if they should call the fraud department.

140. Ms. DiMirco directed Kazak to the number on the back of the debit card.

141. Kazak called that number (though it was not the fraud department) and again explained the situation and asked to be transferred to the fraud department.

142. After another long wait, Kazak was informed that it was the Zelle fraud department and instructed Kazak to go to her local branch and open new accounts.

143. During that call, Kazak was also told that after 3-5 business days the money would be refunded.

144. Kazak complied with the Truist directive, calling the local branch to schedule an appointment, which was scheduled for January 19, 2022 at 9:00 a.m.

145. After 3 hours at the branch setting up new accounts, the Truist representatives stated that "all the money was refunded and placed back into her old?? accounts."

Kazak v. Truist Bank
Verified Complaint

146. Thereafter, Ms. DiMirco confirmed that she transferred the money into Plaintiffs' new accounts.

147. On Thursday, January 20, 2022, Kazak set up the new banking accounts online and saw that the money was transferred back out of her account.

148. Kazak immediately called the local Truist branch and spoke with Truist representative, Ms. Peltier, who represented that she would call her back.

149. Ms. Peltier never called Kazak back.

150. On Friday, January 21, 2022, a representative from the Defendant's fraud department contacted Kazak and explained that they had just received the fraud case and would be investigating the matter further.

151. Upon Kazak's request for the funds, the fraud representative represented that neither FDIC regulations nor Regulation E cover wire fraud, but they would try to get their money back.

152. The acts and omissions of Defendant above amount to a breach of fiduciary duty.

153. Plaintiffs timely brought the issue to Truist at a time when the matter could be resolved, but the ineffectual response allowed the unauthorized wire transfer from Plaintiffs' accounts.

154. Defendant failed to comply with Plaintiffs cancel payment requests.

155. Defendant failed to timely initiate and complete reasonable error resolution investigations.

156. Defendant lied to Plaintiffs relative to immediately locking the accounts, terminating the wire transfers, stopping payment requests, and immediately contacting the fraud department.

157. As a result of this breach, Plaintiffs have been damaged.

158. Plaintiffs' damages, include the loss of account funds, loss of business, and loss of business opportunities.

Kazak v. Truist Bank
Verified Complaint

WHEREFORE, Plaintiffs demands judgment in their favor, including the award of damage, attorneys' fees,  court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

## Count VI: Misrepresentation

159.  Plaintiffs adopt and reincorporate the allegations set forth in paragraphs 1-55, as if fully set forth herein.

160.  Plaintiffs brought the issues set forth herein to Defendant's representative, Ashley DiMirco, via a telephone call.

161.  During this call, Kazak instructed Ms. DiMirco to lock Plaintiffs' accounts immediately and to terminate all wire transfers.

162.  Ms. DiMirco agreed to lock the accounts immediately and terminate the wire transfers.

163.  Ms. DiMirco stated that she would immediately contact the fraud department and call Kazak back.

164.  Ms. DiMirco did not follow through with her promises.

165.  Ms. DiMirco did not immediately lock the accounts.

166.  Ms. DiMirco did not immediately terminate the wire transfers.

167.  Ms. DiMirco did not immediately contact the fraud department.

168.  However, Ms. DiMirco did call Kazak back and informed her that the accounts were locked.

169.  Kazak inquired about the wire transfers and Ms. DiMirco stated that Truist would refund the wires upon them posting to her account.

170.  During this second telephone call with Ms. DiMirco, Kazak asked if they should call the fraud department.

171.   Ms. DiMirco directed Kazak to the number on the back of the debit card.

Kazak v. Truist Bank
Verified Complaint

172.  Kazak called that number (though it was not the fraud department) and again explained the situation and asked to be transferred to the fraud department.

173.  After another long wait, Kazak was informed that it was the Zelle fraud department and instructed Kazak to go to her local branch and open new accounts.

174.  During that call, Kazak was also told that after 3-5 business days the money would be refunded.

175.  Kazak complied with the Truist directive, calling the local branch to schedule an appointment, which was scheduled for January 19, 2022 at 9:00 a.m.

176.  After 3 hours at the branch setting up new accounts, the Truist representatives stated that "all the money was refunded and placed back into her old accounts."

177.  Thereafter, Ms. DiMirco confirmed that she transferred the money into Plaintiffs' new accounts.

178.  On Thursday, January 20, 2022, Kazak set up the new banking accounts online and saw that the money was transferred back out of her account.

179.  Kazak immediately called the local Truist branch and spoke with Truist representative, Ms. Peltier, who represented that she would call her back.

180.  Ms. Peltier never called Kazak back.

181.  On Friday, January 21, 2022, a representative from the Defendant's fraud department contacted Kazak and explained that they had ***just received*** the fraud case and would be investigating the matter further.

182.  Upon Kazak's request for the funds, the fraud representative represented that neither FDIC regulations nor Regulation E cover wire fraud, but they would try to get their money back.

Kazak v. Truist Bank
Verified Complaint

183. Plaintiffs timely brought the issue to Truist at a time when the matter could be resolved, but the ineffectual response allowed the unauthorized wire transfer from Plaintiffs' accounts.

184. Defendant failed to comply with Plaintiffs' stop payment requests.

185. Defendant failed to timely initiate and complete reasonable error resolution investigations.

186. Defendant lied to Plaintiffs relative to immediately locking the accounts, terminating the wire transfers, stopping payment requests, and immediately contacting the fraud department.

187. As set forth herein, Defendant made knowingly false statements to Plaintiffs.

188. Plaintiffs relied, to their detriment, on these statements.

189. As a result of the misrepresentations, Plaintiffs have been damaged.

190. Plaintiffs' damages, include the loss of account funds, loss of business, and loss of business opportunities.

WHEREFORE, Plaintiffs demand judgment in their favor, including the award of damage, attorneys' fees,  court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

## Count VII: Common Law Fraud

191. Plaintiffs adopt and reincorporate the allegations set forth in paragraphs 1-55, as if fully set forth herein.

192. Plaintiffs brought the issues set forth herein to Defendant's representative, Ashley DiMirco, via a telephone call.

193. During this call, Kazak instructed Ms. DiMirco to lock Plaintiffs' accounts immediately and to terminate all wire transfers.

194. Ms. DiMirco agreed to lock the accounts immediately and terminate the wire transfers.

Kazak v. Truist Bank
Verified Complaint

195. Ms. DiMirco stated that she would immediately contact the fraud department and call Kazak back.

196. Ms. DiMirco did not follow through with her promises.

197. Ms. DiMirco did not immediately lock the accounts.

198. Ms. DiMirco did not immediately terminate the wire transfers.

199. Ms. DiMirco did not immediately contact the fraud department.

200. However, Ms. DiMirco did call Kazak back and informed her that the accounts were locked.

201. Kazak inquired about the wire transfers and Ms. DiMirco stated that Truist would refund the wires upon them posting to her account.

202. During this second telephone call with Ms. DiMirco, Kazak asked if they should call the fraud department.

203.  Ms. DiMirco directed Kazak to the number on the back of the debit card.

204. Kazakl called that number (though it was not the fraud department) and again explained the situation and asked to be transferred to the fraud department.

205. After another long wait, Kazak was informed that it was the Zelle fraud department and instructed Kazak to go to her local branch and open new accounts.

206. During that call, Kazak was also told that after 3-5 business days the money would be refunded.

207. Kazak complied with the Truist directive, calling the local branch to schedule an appointment, which was scheduled for January 19, 2022 at 9:00 a.m.

208. After 3 hours at the branch setting up new accounts, the Truist representatives stated that "all the money was refunded and placed back into her old accounts."

Kazak v. Truist Bank
Verified Complaint

209. Thereafter, Ms. DiMirco confirmed that she transferred the money into Plaintiffs' new accounts.

210. On Thursday, January 20, 2022, Kazak set up the new banking accounts online and saw that the money was transferred back out of her account.

211. Kazak immediately called the local Truist branch and spoke with Truist representative, Ms. Peltier, who represented that she would call her back.

212. Ms. Peltier never called Kazak back.

213. On Friday, January 21, 2022, a representative from the Defendant's fraud department contacted Kazak and explained that they had just received the fraud case and would be investigating the matter further.

214. Upon Kazak's request for the funds, the fraud representative represented that neither FDIC regulations nor Regulation E cover wire fraud, but they would try to get their money back.

215. At every juncture Truist representatives failed Plaintiffs.

216. Plaintiffs timely brought the issue to Truist at a time when the matter could be resolved, but the ineffectual response allowed the unauthorized wire transfer from Plaintiffs' accounts.

217. Defendant failed to comply with Plaintiffs' stop payment requests.

218. Defendant failed to timely initiate and complete reasonable error resolution investigations.

219. Defendant lied to Plaintiffs relative to immediately locking the accounts, terminating the wire transfers, stopping payment requests, and immediately contacting the fraud department.

220. As set forth herein, Defendant made knowingly false statements to Plaintiffs.

221. Plaintiffs relied, to their detriment on these statements.

222.  As a result of the knowingly false statements, Plaintiffs have been damaged.

Kazak v. Truist Bank
Verified Complaint

223. Plaintiffs' damages, include the loss of account funds, loss of business, and loss of business opportunities.

   WHEREFORE, Plaintiffs demand judgment in their favor, including the award of damage, attorneys' fees,  court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

## **Count VIII: Violation of Florida's Deceptive and Unfair Trade Practices Act**

224. Plaintiffs adopt and reincorporate the allegations set forth in paragraphs 1-55, as if fully set forth herein.

225. Plaintiffs brought the issues set forth herein to Defendant's representative, Ashley DiMirco, via a telephone call.

226. During this call, Kazak instructed Ms. DiMirco to lock Plaintiffs' accounts immediately and to terminate all wire transfers.

227. Ms. DiMirco agreed to lock the accounts immediately and terminate the wire transfers.

228. Ms. DiMirco stated that she would immediately contact the fraud department and call Kazak back.

229. Ms. DiMirco did not follow through with her promises.

230. Ms. DiMirco did not immediately lock the accounts.

231. Ms. DiMirco did not immediately terminate the wire transfers.

232. Ms. DiMirco did not immediately contact the fraud department.

233. However, Ms. DiMirco did call Kazak back and informed her that the accounts were locked.

234. Kazak inquired about the wire transfers and Ms. DiMirco stated that Truist would refund the wires upon them posting to her account.

Kazak v. Truist Bank
Verified Complaint

235. During this second telephone call with Ms. DiMirco, Kazak asked if they should call the fraud department.

236. Ms. DiMirco directed Kazak to the number on the back of the debit card.

237. Kazakl called that number (though it was not the fraud department) and again explained the situation and asked to be transferred to the fraud department.

238. After another long wait, Kazak was informed that it was the Zelle fraud department and instructed Kazak to go to her local branch and open new accounts.

239. During that call, Kazak was also told that after 3-5 business days the money would be refunded.

240. Kazak complied with the Truist directive, calling the local branch to schedule an appointment, which was scheduled for January 19, 2022 at 9:00 a.m.

241. After 3 hours at the branch setting up new accounts, the Truist representatives stated that "all the money was refunded and placed back into her old accounts."

242. Thereafter, Ms. DiMirco confirmed that she transferred the money into Plaintiffs' new accounts.

243. On Thursday, January 20, 2022, Kazak set up the new banking accounts online and saw that the money was transferred back out of her account.

244. Kazak immediately called the local Truist branch and spoke with Truist representative, Ms. Peltier, who represented that she would call her back.

245. Ms. Peltier never called Kazak back.

246. On Friday, January 21, 2022, a representative from the Defendant's fraud department contacted Kazak and explained that they had just received the fraud case and would be investigating the matter further.

Kazak v. Truist Bank
Verified Complaint

247. Upon Kazak's request for the funds, the fraud representative represented that neither FDIC regulations nor Regulation E cover wire fraud, but they would try to get their money back.

248. At every juncture Truist representatives failed Plaintiffs.

249. Plaintiffs timely brought the issue to Truist at a time when the matter could be resolved, but the ineffectual response allowed the unauthorized wire transfer from Plaintiffs' accounts.

250. Defendant failed to comply with Plaintiffs' stop payment requests.

251. Defendant failed to timely initiate and complete reasonable error resolution investigations.

252. Defendant lied to Plaintiffs relative to immediately locking the accounts, terminating the wire transfers, stopping payment requests, and immediately contacting the fraud department.

253. As set forth herein, Defendant made knowingly false statements to Plaintiffs.

254. Plaintiffs relied, to their detriment on these statements.

255.  As a result of these deceptive trade practices, Plaintiffs have been damaged.

256. Plaintiffs' damages, include the loss of account funds, loss of business, and loss of business opportunities.

WHEREFORE, Plaintiffs demand judgment in their favor, including the award of damage, attorneys' fees,  court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

## DEMAND FOR ATTORNEYS' FEES

Plaintiffs hereby reserve their right to attorneys' fees and costs pursuant to section 57.105, Florida Statute, or as otherwise entitled pursuant to contract or statute.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all counts so triable.

Page 21 of 22

Kazak v. Truist Bank
Verified Complaint

## DESIGNATION OF E-MAIL ADDRESSES

Pursuant to Florida Rules of General Practice and Judicial Administration 2.516, the undersigned counsel designates the following primary and secondary electronic mail ("e-mail") addresses for the purpose of service of all documents required to be served pursuant to Rule 2.516 in this proceeding:

> **Primary E-Mail:**   Service@attorneyoffices.org
> **Secondary E-Mail:**   Fax@attorneyoffices.org

Please note that service by e-mail should utilize <u>both</u> e-mail addresses. *You are hereby notified that pleadings and/or documents which are not served to the e-mail addresses above will not be considered properly served per Rule 2.516 of the Florida Rules of General Practice and Judicial Administration.* If service of hard copies is to be made in addition to e-mail service pursuant to Rule 2.516(b)(2) of the Florida Rules of General Practice and Judicial Administration, counsel requests that the copies be served at the physical address listed below.

## VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing Verified Complaint for Emergency Injunction and that the facts alleged therein are true and correct to the best of my knowledge and belief.

_____
Linda Kazak
LINDA KAZAK REAL ESTATE
Executed on: December _____, 2022


/s/ _____ *Charles R. Gallagher III* _____
CHARLES R. GALLAGHER III, ESQ.
Florida Bar No. 0510041
E-Mail:  crg@attorneyoffices.org
Gallagher & Associates Law Firm, P.A.
5720 Central Avenue
St. Petersburg, FL 33707
Telephone: (727) 344-5297
*Primary E-Mail:  service@attorneyoffices.org*
*Secondary E-Mail: fax@attorneyoffices.org*
Counsel for Plaintiffs

Page 22 of 22

Kazak v. Truist
Verified Complaint

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA
CIVIL DIVISION

LINDA KAZAK and KAZAK REAL ESTATE,
LLC d/b/a KAZAK REAL ESTATE,

Case No.: 22-CA-005316

     Plaintiffs,

v.

TRUIST BANK f/k/a BRANCH BANKING
AND TRUST COMPANY,

     Defendant.

_____/

## SUMMONS

**THE STATE OF FLORIDA:**
**To each Sheriff of the State:**

     **YOU ARE COMMANDED** to serve this summons and a copy of the Complaint in this action on Defendant TRUIST BANK f/k/a BRANCH BANKING AND TRUST COMPANY, by and through its registered agent, officer, director, business agent, employee or statutory agent:

**TRUIST BANK f/k/a BRANCH BANKING AND TRUST COMPANY**
**CORPORATION SERVICE COMPANY, REGISTERED AGENT**
**1201 HAYS STREET**
**TALLAHASSEE, FLORIDA 32301**

     Each defendant is required to serve written defenses to the complaint or petition on Plaintiff's attorney, whose name and address is:  **CHARLES R. GALLAGHER III, ESQUIRE, 5720 Central Avenue, St. Petersburg, Florida 33707**, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the **Clerk of this Court** at **2075 Dr. Martin Luther King Jr. Blvd., Fort Myers, FL 33901 or mail to P.O. Box 310, Fort Myers, FL 33902**, either before service on Plaintiffs' attorney or immediately thereafter. A phone call will not protect you.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

**DATED** on _____12/20/2022_____.

**KEVIN C. KARNES**
Lee County Clerk of the Court & Comptroller
2075 Dr. Martin Luther King Blvd.
Fort Myers, FL 33901
(239) 533-5000

**KEVIN C. KARNES**
As Clerk of the Court

By: _Kennedy Harris_

As Deputy Clerk

Page 1 of 3

## REQUEST FOR ACCOMMODATIONS BY PERSONS WITH DISABILITIES

**AMERICANS WITH DISABILITY ACT: In accordance with the Americans with Disabilities Act, If you are a person with a disability who needs any accommodation in order to participate in a court proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Brooke Dean, Operations Division Manager for the 20th Judicial Circuit whose office is located at the Lee County Justice Center, 1700 Monroe St., Fort Myers, FL 33901, and whose telephone number is (239) 533-1771, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court located at **2075 Dr. Martin Luther King Jr. Blvd., Fort Myers, FL 33901 or mail to P.O. Box 310, Fort Myers, FL 33902,** you must also mail or take a copy of your written response to the "Plaintiff's" Attorney" named below:

PLAINTIFF'S ATTORNEY:

Charles R. Gallagher III, Esq.
Florida Bar No. 0510041
Gallagher & Associates Law Firm, P.A.
5720 Central Avenue
St. Petersburg, FL 33707
Telephone:  (727) 344-5297
Designated Service Email:  service@attorneyoffices.org
Secondary Service Email:  fax@attorneyoffices.org

Kazak v. Truist Bank
Summons – Truist Bank

# **IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff's Attorney" (Demandante o Abogado del Demandante).

PLAINTIFF'S ATTORNEY:

Charles R. Gallagher III, Esq.
Florida Bar No. 0510041
Gallagher & Associates Law Firm, P.A.
5720 Central Avenue
St. Petersburg, FL 33707
Telephone:  (727) 344-5297
Designated Service Email:  service@attorneyoffices.org
Secondary Service Email:  fax@attorneyoffices.org

# **IMPORTANT**

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

PLAINTIFF'S ATTORNEY:

Charles R. Gallagher III, Esq.
Florida Bar No. 0510041
Gallagher & Associates Law Firm, P.A.
5720 Central Avenue
St. Petersburg, FL 33707
Telephone:  (727) 344-5297
Designated Service Email:  service@attorneyoffices.org
Secondary Service Email:  fax@attorneyoffices.org

Page 3 of 3

Kazak v. Truist Bank
Summons – Truist Bank

12/20/2022 1:11 PM FILED LEE COUNTY CLERK OF COURTS

IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR
LEE COUNTY, FLORIDA                                    CIVIL ACTION

CASE NO: 22-CA-005316

KAZAK, LINDA et al
   Plaintiff
vs
TRUIST BANK, fka BRANCH BANKING AND TRUST COMPANY
   Defendant
_____/

## STANDING ORDER IN CIRCUIT CIVIL CASES IN THE TWENTIETH JUDICIAL CIRCUIT

PURSUANT to Florida Rule of Civil Procedure 1.200(a), Florida Rule of Judicial Administration 2.545, and Administrative Order 1.13 (as amended) entered by the Chief Judge of this Circuit, the parties are ordered to adhere to the following information and procedures applicable to civil lawsuits:

1. **SERVICE OF THIS ORDER.** The Plaintiff is directed to serve a copy of this order with each Summons issued in this case. One copy of this Order is to be filed with the Clerk of the Circuit Court with proof of service. The Plaintiff shall pay the appropriate statutory clerk's fees on copies for each Standing Order issued and attached to the Summons.

2. **CIVIL CASE MANAGEMENT SYSTEM.** The Supreme Court of Florida has established guidelines for the prompt processing and resolution of civil cases. This Court has adopted a case management system to help meet those guidelines. In contested cases (other than residential foreclosures, involuntary commitment of sexually violent predators, Extraordinary Writs, 90 day Notice of Medical Malpractice Claim, and Administrative Appeals), the parties are required to participate in the case management system. The Court will issue a Case Management Plan after 150 days of the filing of a case in the event the parties have not submitted an Agreed Case Management Plan that has been approved by the Court. However, if it becomes necessary to amend the court-issued Case Management Plan, the parties may submit an Agreed Case Management Plan, subject to approval by the Court, or if the parties cannot agree on an Amended Plan, the parties may request a case management conference. The form of the Agreed Case Management Plan may be accessed at the Court's website at: https://www.ca.cjis20.org/Programs/Civil-Case-Management/generalcivil.aspx. If a case management conference is scheduled, attendance by trial counsel and those parties who are not represented by counsel is mandatory. Agreed Case Management Plans are to be submitted to Lee County Civil Case Management by email in Word format to LeeCircuitCivilCM@ca.cjis20.org or if no access to email then mailed to Lee County Civil Case Management 1700 Monroe Street Fort Myers Fl. 33901. DO NOT file with the Clerk of Court.

3. **ALTERNATIVE DISPUTE RESOLUTION (ADR).** ADR provides parties with an

Rev. 9/28/21

out-of-court alternative to settling disagreements.  The Court requires the parties to participate in ADR prior to trial.  Mediation is mandatory unless the parties agree to another form of ADR. Mediation is a conference at which an independent third party attempts to arrange a settlement between the parties. The Court, at its discretion, may order the case be referred to Non-Binding Arbitration.  Non-Binding Arbitration is the process in which the court refers a case to a registered arbitrator, or panel of arbitrators, who will hear evidence and make an award which may become a final judgment if a Motion for Trial De Novo is not timely filed pursuant to Fla.R.Civ.P. 1820(h).

4.  **FAILURE TO PROSECUTE.** The Court will issue a Notice of Intent to Dismiss a case if there is no record of activity within a ten (10) month period of time.

5. **RULES OF PROFESSIONALISM.**  The Twentieth Judicial Circuit has adopted Administrative Order 2.20, which sets forth standards of professional courtesy and conduct for all counsel practicing within the Circuit and self-represented litigants.  The Court requires that all familiarize themselves and comply with Administrative Order 2.20.  Administrative Order 2.20 may be viewed on the Court's website at: http://www.ca.cjis20.org/web/main/ao_admin.asp

**DONE AND ORDERED** in Chambers at Fort Myers, Lee County, Florida.

/s/Alane C. Laboda
Administrative Circuit Judge

****Original on file in the office of the Circuit Court Administrative Judge, Lee County**

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA
CIVIL DIVISION

LINDA KAZAK and KAZAK REAL ESTATE,
LLC d/b/a KAZAK REAL ESTATE,

       Plaintiffs,

v.

TRUIST BANK f/k/a BRANCH BANKING
AND TRUST COMPANY,

       Defendant.

_____/

Case No.: 22-CA-005316

## <u>ACCEPTANCE OF SERVICE OF PROCESS</u>

THE UNDERSIGNED, DAVID A. ELLIOTT, ESQUIRE, hereby acknowledges receipt of the *Verified Complaint and Demand for Jury Trial* and *Standing Order in Circuit Civil Cases in the Twentieth Judicial Circuit* and accepts service of process in this cause on behalf of Defendant, TRUIST BANK f/k/a BRANCH BANKING AND TRUST COMPANY, and specifically waives process by Sheriff or other person duly authorized to serve process in the State of Florida on behalf of said Defendant in this cause.

DAVID A. ELLIOTT, ESQUIRE
Florida Bar No.: 94237
Burr Forman, LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
Telephone: 205-458-5324
E-Mail: delliott@burr.com
Counsel for Defendant

Page 1 of 2

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed this _22nd_ day of December, 2022, using the Florida Courts E-filing Portal system and that a true and correct copy of the foregoing was served on the following parties: **Charles R. Gallagher III, Esquire**, Gallagher & Associates Law Firm, P.A., 5720 Central Avenue, St. Petersburg, FL 33707, (_crg@attorneyoffices.org_; _service@attorneyoffices.org; fax@attorneyoffices.org_).

DAVID A. ELLIOTT, ESQUIRE

Kazak v. Truist Bank
Case No.:  22-CA-005316
Acceptance of Service

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

      **I.    CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>TWENTIETH</u>  JUDICIAL CIRCUIT, IN AND FOR <u>LEE</u>  COUNTY, FLORIDA

<u>LINDA KAZAK, KAZAK REAL ESTATE, LLC</u>
Plaintiff

Case # _____
Judge _____

vs.
<u>TRUIST BANK</u>
Defendant

      **II.    AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

      **III.    TYPE OF CASE**    (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☐ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

- 2 -

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.**   **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.**   **NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

   <u>8</u>

**VI.**   **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.**   **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.**   **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.**   **DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of <u>Florida Rule of Judicial Administration 2.425</u>.

Signature: <u>s/ Charles R. Gallagher III</u>     Fla. Bar # <u>510041</u>
      Attorney or party               (Bar # if attorney)

<u>Charles R. Gallagher III</u>         <u>12/19/2022</u>
  (type or print name)         Date

- 3 -

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA
CIVIL DIVISION

LINDA KAZAK and KAZAK REAL                    Case No.:_____
ESTATE, LLC d/b/a KAZAK REAL
ESTATE,

     Plaintiffs,

v.

TRUIST BANK f/k/a BRANCH BANKING
AND TRUST COMPANY,

     Defendant.
_____/

## **VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL**

     COME NOW, Plaintiffs, LINDA KAZAK and LINDA KAZAK REAL ESTATE, LLC,

by and through their undersigned counsel, and pursuant to the Florida Rules of Civil Procedure,

and file this Verified Complaint and Demand for Jury Trial  against Defendant, TRUIST BANK

f/k/a BRANCH BANKING AND TRUST COMPANY, and in support thereof states as follows:

### **Venue & Jurisdiction**

1.   Plaintiff, LINDA KAZAK ("Kazak"), is a resident of Lee County, Florida, and conducts

    business in Lee County Florida as a licensed Real Estate Broker.

2.   Plaintiff, KAZAK REAL ESTATE, LLC ("Kazak Real Estate"), is an active Florida

    Limited Liability Company and conducts business in Lee County, Florida

3.   Kazak conducts business in Lee County, Florida as a principal of Kazak Real Estate

    (collectively "Plaintiffs").

4.   Defendant TRUIST BANK f/k/a BRANCH BANKING AND TRUST COMPANY

    ("Defendant" or "Truist"), is a Foreign Profit Corporation and conducts business in Lee

    County, Florida.

5.    Venue is proper in this Court as all acts giving rise to this claim have occurred in Lee County, Florida.

6.    Defendant is subject to personal jurisdiction in Lee County.

7.    The damages in this case presently exceed $30,000.

8.    Plaintiffs satisfied all actions precedent to bringing this action.

### Common Allegations

9.    This case involves the acts and omissions of Defendant in connection with a fraudulent enterprise.

10.   Plaintiffs were legacy account holders of BRANCH BANKING AND TRUST COMPANY's ("BB&T") accounts that were absorbed with the SunTrust and BB&T merger in ███ that created Truist.

11.   At the time of the account issues herein, Plaintiffs never entered into any prior account agreements with Truist and only executed account agreements with BB&T in Lee County.

12.   Plaintiffs were the victims of a cybercrime fraud enterprise, which included Defendant, which allowed third parties to gain control of their accounts and deplete the account contents in amounts exceeding $112,000.00.

13.   Plaintiffs made immediate contact to Truist to report the fraud, at a time when the accounts could be frozen and the fraudulent wire transfers could be terminated/recaptured.

14.   However, despite this notice to Truist within an hour of the fraud, Truist did nothing and did not follow its own fraud response protocols.

15.   On January 18, 2022 at 11:40 a.m., Kazak received a call from BBT's consumer fraud division at 1-800-226-5228.

16.   The call was disconnected, but Kazak called back to confirm that it was a legitimate number (it was in fact a Truist number).

Kazak v. Truist Bank
Verified Complaint

17. The fraud department called back at 11:42 a.m. and the call lasted for 48 minutes.

18. During this time, Kazak was told that there were fraudulent charges on her account: $.99 and $127.43 from Target and $355.15 from Walmart.

19. The representative stated that the charges were declined but BB&T needed to lock the account and change the password.

20. Kazak did not give any identification information but represented that she needed to change the password; the representative sent several one-time passcodes to her phone during this 48-minute call.

21. When finished, the fraud department representative gave Kazak a reference number of BBT01182275.

22. Immediately after hanging up, Kazak received an email from Truist at 12:13 p.m. stating that Plaintiffs were enrolled in wire transfer services.

23. Plaintiffs did not initiate any wire transfers.

24. Kazak attempted to call the number listed on the email (844-487-8478).

25. Kazak was put on hold for almost 15 minutes.

26. Due to the long hold time, Kazak hung up and called a local branch.

27. During her call to the local branch, Kazak spoke with relationship manager, Ashley DiMirco ("Ms. DiMirco"), and explained the situation.

28. During the call, Kazak told Ms. DiMirco to lock her accounts immediately and terminate all wire transfers.

29. Ms. DiMirco agreed to lock the accounts immediately and terminate the wire transfers.

30. Ms. DiMirco stated that she would immediately contact the fraud department and call Kazak back.

31. Ms. DiMirco did not follow through with her promises.

Page 3 of 22

Kazak v. Truist Bank
Verified Complaint

32. Ms. DiMirco did not immediately lock the accounts.

33. Ms. DiMirco did not immediately terminate the wire transfers.

34. Ms. DiMirco did not immediately contact the fraud department.

35. However, Ms. DiMirco did call Kazak back and informed her that the accounts were locked.

36. Kazak inquired about the wire transfers and Ms. DiMirco stated that Truist would refund the wires upon them posting to her account.

37. During this second telephone call with Ms. DiMirco, Kazak asked if they should call the fraud department.

38. Ms. DiMirco directed Kazak to the number on the back of the debit card.

39. Kazak called that number (though it was not the fraud department) and again explained the situation and asked to be transferred to the fraud department.

40. After another long wait, Kazak was informed that it was the Zelle fraud department and instructed Kazak to go to her local branch and open new accounts.

41. During that call, Kazak was also told that after 3-5 business days the money would be refunded.

42. Kazak complied with the Truist directive, calling the local branch to schedule an appointment, which was scheduled for January 19, 2022 at 9:00 a.m.

43. After 3 hours at the branch setting up new accounts, the Truist representatives stated that "all the money was refunded and placed back into her old accounts."

44. Thereafter, Ms. DiMirco confirmed that she transferred the money into Plaintiffs' new accounts.

45. On Thursday, January 20, 2022, Kazak set up the new banking accounts online and saw that the money was transferred back out of her account.

Page 4 of 22

Kazak v. Truist Bank
Verified Complaint

46. Kazak immediately called the local Truist branch and spoke with Truist representative, Ms. Peltier, who represented that she would call her back.

47. Ms. Peltier never called Kazak back.

48. On Friday, January 21, 2022, a representative from the Defendant's fraud department contacted Kazak and explained that they had ***just received*** the fraud case and would be investigating the matter further.

49. Upon Kazak's request for the funds, the fraud representative represented that neither FDIC regulations nor Regulation E cover wire fraud, but they would try to get their money back.

50. At every juncture Truist representatives failed Plaintiffs.

51. Plaintiffs timely brought the issue to Truist at a time when the matter could be resolved, but the ineffectual response allowed the unauthorized wire transfer from Plaintiffs' accounts.

52. Defendant failed to comply with Plaintiffs' stop payment requests.

53. Defendant failed to timely initiate and complete reasonable error resolution investigations.

54. Defendant lied to Plaintiffs relative to immediately locking the accounts, terminating the wire transfers, stopping payment requests, and immediately contacting the fraud department.

55. As a result of Defendant's omissions, Plaintiffs have been damaged.

## Count I: Declaratory Judgment

56. Plaintiffs adopt and reincorporate the allegations set forth in paragraphs 1-55, as if fully set forth herein.

57. This is an action for declaratory relief against Defendant.

58. There exists a bona fide dispute between Plaintiffs and Defendant.

59. Plaintiffs are in doubt as to their rights under the account agreements and federal law.

Kazak v. Truist Bank
Verified Complaint

60. Plaintiffs had deposit/account agreements[1] ("Agreements") with Defendant's predecessor, BB&T.

61. Plaintiffs have a justiciable question as to the existence of their rights under the Agreements and federal law.

62. The declaration sought by Plaintiffs deal with a present, ascertained or ascertainable state of facts, or present controversy as to a state of facts, to-wit: the Agreements and federal law.

63. The declaration involves the rights of Plaintiffs and depends upon the facts herein or the law applicable to the facts herein.

64. Plaintiffs have a present interest in the subject matter.

65. The parties' antagonistic and adverse interests are all before the Court.

66. The relief sought is not merely giving of legal advice by the Court or the answer to questions propounded from curiosity.

67. There is a bona fide, actual, present practical need for the declaration.

68. There is a substantial likelihood that Plaintiffs will prevail on the merits.

69. Plaintiffs seek a determination on the rights and obligations of the parties relative to the Agreements and federal law.

70. As a proximate result of Defendant's actions, Plaintiffs continue to suffer irreparable harm for which monetary damages are inadequate.

---

[1] Plaintiffs are not in possession of the contract.  The contract is in the possession of Defendant. As a matter of law, the pleader need not attach a copy of the contract, and "…where the instrument is not within the pleader's possession or control…such failure to attach should not be fatal to the cause." *Sachse v. Tampa Music Co*., <u>262 So. 2d 17</u> (Fla. 2nd DCA 1972) (citations omitted).  Further, "…post pleading, pretrial discovery methods as depositions, request for admissions and interrogatories can be used by the plaintiff to show that there was a… contract between the defendant and another party." *Id.* (citation omitted).

Kazak v. Truist Bank
Verified Complaint

WHEREFORE, Plaintiffs demands a declaration of their rights by this Court and for such other and further relief as this Court deems equitable, proper, and just.

## Count II: Breach of Contract

71.  Plaintiffs adopt and reincorporate the allegations set forth in paragraphs 1-55, as if fully set forth herein.

72.  Plaintiffs and Defendant were parties to a written contract known Agreements.

73.  Plaintiffs had Agreements with Defendant's predecessor BB&T.

74.  The Agreements governed all matters among Plaintiffs and Defendant.

75.  Under these Agreements, Defendant has obligations to cancel pay requests made by Plaintiffs.

76.  Plaintiffs made cancel pay requests to Defendant as set forth herein.

77.  Defendant failed to comply with the cancel pay directives.

78.  As a result of Defendant's failure to comply with the cancel pay directives, Defendant has breached the Agreements with Plaintiffs.

79.  As a result of Defendant's breach, Plaintiffs have incurred profound damages, including the loss of the account balances.

WHEREFORE, Plaintiffs demand judgment in their favor, including the award of damages, attorneys' fees,  court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

## Count III: Breach of the Contractual Obligation of Good Faith and Fair Dealing

80.  Plaintiffs adopt and reincorporate the allegations set forth in paragraphs 1-55 and 71-79, as if fully set forth herein.

81.  Plaintiffs and Defendant were parties to written contracts known as Agreements.

82.  Plaintiffs had Agreements with Defendant's predecessor BB&T.

Page 7 of 22

Kazak v. Truist Bank
Verified Complaint

83. The Agreements governed all matters among Plaintiffs and Defendant.

84. Under the Agreements, Defendant had an obligation to cancel pay requests made by Plaintiffs.

85. Plaintiffs made cancel pay requests to Defendant as set forth herein.

86. Defendant promised to enact the cancel pay requests.

87. Defendant failed to comply with the cancel pay directives.

88. As a result of Defendants failure to comply with the cancel pay directives, Defendant breached the Agreements.

89. As a result of the above, Defendant breached the contractual obligation of good faith and fair dealing to Plaintiffs.

90. As a result of Defendant's breach, Plaintiffs incurred profound damages resulting from the loss of money from their accounts.

WHEREFORE, Plaintiffs demand judgment in their favor, including the award of damages, attorneys' fees, court costs, and for such other and further relief as this Court deems equitable, proper, and just.

## Count IV: Negligence

91. Plaintiff adopts and reincorporates the allegations set forth in paragraphs 1-55, as if fully set forth herein.

92. Plaintiffs brought the issues set forth herein to Defendant's representative, Ashley DiMirco, via a telephone call.

93. During this call, Kazak instructed Ms. DiMirco to lock Plaintiffs' accounts immediately and to terminate all wire transfers.

94. Ms. DiMirco agreed to lock the accounts immediately and terminate the wire transfers.

95. Ms. DiMirco stated that she would immediately contact the fraud department and call Kazak back.

96. Ms. DiMirco did not follow through with her promises.

97. Ms. DiMirco did not immediately lock the accounts.

98. Ms. DiMirco did not immediately terminate the wire transfers.

99. Ms. DiMirco did not immediately contact the fraud department.

100. However, Ms. DiMirco did call Kazak back and informed her that the accounts were locked.

101. Kazak inquired about the wire transfers and Ms. DiMirco stated that Truist would refund the wires upon them posting to her account.

102. During this second telephone call with Ms. DiMirco, Kazak asked if they should call the fraud department.

103.  Ms. DiMirco directed Kazak to the number on the back of the debit card.

104. Kazakl called that number (though it was not the fraud department) and again explained the situation and asked to be transferred to the fraud department.

105. After another long wait, Kazak was informed that it was the Zelle fraud department and instructed Kazak to go to her local branch and open new accounts.

106. During that call, Kazak was also told that after 3-5 business days the money would be refunded.

107. Kazak complied with the Truist directive, calling the local branch to schedule an appointment, which was scheduled for January 19, 2022 at 9:00 a.m.

108. After 3 hours at the branch setting up new accounts, the Truist representatives stated that "all the money was refunded and placed back into her old?? accounts."

Kazak v. Truist Bank
Verified Complaint

109. Thereafter, Ms. DiMirco confirmed that she transferred the money into Plaintiffs' new accounts.

110. On Thursday, January 20, 2022, Kazak set up the new banking accounts online and saw that the money was transferred back out of her account.

111. Kazak immediately called the local Truist branch and spoke with Truist representative, Ms. Peltier, who represented that she would call her back.

112. Ms. Peltier never called Kazak back.

113. On Friday, January 21, 2022, a representative from the Defendant's fraud department contacted Kazak and explained that they had just received the fraud case and would be investigating the matter further.

114. Upon Kazak's request for the funds, the fraud representative represented that neither FDIC regulations nor Regulation E cover wire fraud, but they would try to get their money back.

115. At every juncture Truist representatives failed Plaintiffs.

116. Plaintiffs timely brought the issue to Truist at a time when the matter could be resolved, but the ineffectual response allowed the unauthorized wire transfer from Plaintiffs' accounts.

117. Defendant failed to comply with Plaintiffs' stop payment requests.

118. Defendant failed to timely initiate and complete reasonable error resolution investigations.

119. Defendant lied to Plaintiffs relative to immediately locking the accounts, terminating the wire transfers, stopping payment requests, and immediately contacting the fraud department.

120. As a result of Defendant's omissions, Plaintiffs have been damaged.

121. Defendant, through its agents Ms. DiMirco and Ms. Peltier, had a duty to Plaintiffs to act with due care to address Plaintiffs' requests and concerns.

Kazak v. Truist Bank
Verified Complaint

122. Defendant breached that duty as set forth above by ignoring Kazak's stop payment directives, by not following through with its representations to terminate all wire transfers, and by not locking Plaintiffs' accounts as promised.

123. Defendant's actions and/or omissions caused Plaintiffs' damages.

124. Plaintiffs' damages, as a result of Defendant's negligence, include the loss of account funds, loss of business, and loss of business opportunities.

WHEREFORE, Plaintiffs demand judgment in their favor, including the award of damages, attorneys' fees, court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

## **Count V: Breach of Fiduciary Duty**

125. Plaintiffs adopts and reincorporates the allegations set forth in paragraphs 1-55, as if fully set forth herein.

126. Defendant owed Plaintiffs a fiduciary duty under these facts.

127. Defendant entered into a banking relationship with Plaintiffs, with whom it has established a confidential or fiduciary relationship.

128. This transaction is one from which Defendant stands to benefit at the expense of the customer, Plaintiffs, relative to the recapture of funds, funds Defendant represented would be returned.

129. After learning about the fraud/wire transfer issue, Kazak called Defendant's local branch and spoke with relationship manager, Ashley DiMirco, and explained the situation.

130. During the call, Kazak instructed Ms. DiMirco to lock her accounts immediately and terminate all wire transfers.

131. Ms. DiMirco agreed to lock the accounts immediately and terminate the wire transfers.

Kazak v. Truist Bank
Verified Complaint

132. Ms. DiMirco stated that she would immediately contact the fraud department and call Kazak back.

133. Ms. DiMirco did not follow through with her promises.

134. Ms. DiMirco did not immediately lock the accounts.

135. Ms. DiMirco did not immediately terminate the wire transfers.

136. Ms. DiMirco did not immediately contact the fraud department.

137. However, Ms. DiMirco did call Kazak back and informed her that the accounts were locked.

138. Kazak inquired about the wire transfers and Ms. DiMirco stated that Truist would refund the wires upon them posting to her account.

139. During this second telephone call with Ms. DiMirco, Kazak asked if they should call the fraud department.

140. Ms. DiMirco directed Kazak to the number on the back of the debit card.

141. Kazak called that number (though it was not the fraud department) and again explained the situation and asked to be transferred to the fraud department.

142. After another long wait, Kazak was informed that it was the Zelle fraud department and instructed Kazak to go to her local branch and open new accounts.

143. During that call, Kazak was also told that after 3-5 business days the money would be refunded.

144. Kazak complied with the Truist directive, calling the local branch to schedule an appointment, which was scheduled for January 19, 2022 at 9:00 a.m.

145. After 3 hours at the branch setting up new accounts, the Truist representatives stated that "all the money was refunded and placed back into her old?? accounts."

Kazak v. Truist Bank
Verified Complaint

146. Thereafter, Ms. DiMirco confirmed that she transferred the money into Plaintiffs' new accounts.

147. On Thursday, January 20, 2022, Kazak set up the new banking accounts online and saw that the money was transferred back out of her account.

148. Kazak immediately called the local Truist branch and spoke with Truist representative, Ms. Peltier, who represented that she would call her back.

149. Ms. Peltier never called Kazak back.

150. On Friday, January 21, 2022, a representative from the Defendant's fraud department contacted Kazak and explained that they had just received the fraud case and would be investigating the matter further.

151. Upon Kazak's request for the funds, the fraud representative represented that neither FDIC regulations nor Regulation E cover wire fraud, but they would try to get their money back.

152. The acts and omissions of Defendant above amount to a breach of fiduciary duty.

153. Plaintiffs timely brought the issue to Truist at a time when the matter could be resolved, but the ineffectual response allowed the unauthorized wire transfer from Plaintiffs' accounts.

154. Defendant failed to comply with Plaintiffs cancel payment requests.

155. Defendant failed to timely initiate and complete reasonable error resolution investigations.

156. Defendant lied to Plaintiffs relative to immediately locking the accounts, terminating the wire transfers, stopping payment requests, and immediately contacting the fraud department.

157. As a result of this breach, Plaintiffs have been damaged.

158. Plaintiffs' damages, include the loss of account funds, loss of business, and loss of business opportunities.

Page 13 of 22

Kazak v. Truist Bank
Verified Complaint

WHEREFORE, Plaintiffs demands judgment in their favor, including the award of damage, attorneys' fees, court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

### Count VI: Misrepresentation

159. Plaintiffs adopt and reincorporate the allegations set forth in paragraphs 1-55, as if fully set forth herein.

160. Plaintiffs brought the issues set forth herein to Defendant's representative, Ashley DiMirco, via a telephone call.

161. During this call, Kazak instructed Ms. DiMirco to lock Plaintiffs' accounts immediately and to terminate all wire transfers.

162. Ms. DiMirco agreed to lock the accounts immediately and terminate the wire transfers.

163. Ms. DiMirco stated that she would immediately contact the fraud department and call Kazak back.

164. Ms. DiMirco did not follow through with her promises.

165. Ms. DiMirco did not immediately lock the accounts.

166. Ms. DiMirco did not immediately terminate the wire transfers.

167. Ms. DiMirco did not immediately contact the fraud department.

168. However, Ms. DiMirco did call Kazak back and informed her that the accounts were locked.

169. Kazak inquired about the wire transfers and Ms. DiMirco stated that Truist would refund the wires upon them posting to her account.

170. During this second telephone call with Ms. DiMirco, Kazak asked if they should call the fraud department.

171. Ms. DiMirco directed Kazak to the number on the back of the debit card.

Kazak v. Truist Bank
Verified Complaint

172. Kazak called that number (though it was not the fraud department) and again explained the situation and asked to be transferred to the fraud department.

173. After another long wait, Kazak was informed that it was the Zelle fraud department and instructed Kazak to go to her local branch and open new accounts.

174. During that call, Kazak was also told that after 3-5 business days the money would be refunded.

175. Kazak complied with the Truist directive, calling the local branch to schedule an appointment, which was scheduled for January 19, 2022 at 9:00 a.m.

176. After 3 hours at the branch setting up new accounts, the Truist representatives stated that "all the money was refunded and placed back into her old accounts."

177. Thereafter, Ms. DiMirco confirmed that she transferred the money into Plaintiffs' new accounts.

178. On Thursday, January 20, 2022, Kazak set up the new banking accounts online and saw that the money was transferred back out of her account.

179. Kazak immediately called the local Truist branch and spoke with Truist representative, Ms. Peltier, who represented that she would call her back.

180. Ms. Peltier never called Kazak back.

181. On Friday, January 21, 2022, a representative from the Defendant's fraud department contacted Kazak and explained that they had ***just received*** the fraud case and would be investigating the matter further.

182. Upon Kazak's request for the funds, the fraud representative represented that neither FDIC regulations nor Regulation E cover wire fraud, but they would try to get their money back.

Kazak v. Truist Bank
Verified Complaint

183. Plaintiffs timely brought the issue to Truist at a time when the matter could be resolved, but the ineffectual response allowed the unauthorized wire transfer from Plaintiffs' accounts.

184. Defendant failed to comply with Plaintiffs' stop payment requests.

185. Defendant failed to timely initiate and complete reasonable error resolution investigations.

186. Defendant lied to Plaintiffs relative to immediately locking the accounts, terminating the wire transfers, stopping payment requests, and immediately contacting the fraud department.

187. As set forth herein, Defendant made knowingly false statements to Plaintiffs.

188. Plaintiffs relied, to their detriment, on these statements.

189. As a result of the misrepresentations, Plaintiffs have been damaged.

190. Plaintiffs' damages, include the loss of account funds, loss of business, and loss of business opportunities.

WHEREFORE, Plaintiffs demand judgment in their favor, including the award of damage, attorneys' fees, court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

## Count VII: Common Law Fraud

191. Plaintiffs adopt and reincorporate the allegations set forth in paragraphs 1-55, as if fully set forth herein.

192. Plaintiffs brought the issues set forth herein to Defendant's representative, Ashley DiMirco, via a telephone call.

193. During this call, Kazak instructed Ms. DiMirco to lock Plaintiffs' accounts immediately and to terminate all wire transfers.

194. Ms. DiMirco agreed to lock the accounts immediately and terminate the wire transfers.

Kazak v. Truist Bank
Verified Complaint

195. Ms. DiMirco stated that she would immediately contact the fraud department and call Kazak back.

196. Ms. DiMirco did not follow through with her promises.

197. Ms. DiMirco did not immediately lock the accounts.

198. Ms. DiMirco did not immediately terminate the wire transfers.

199. Ms. DiMirco did not immediately contact the fraud department.

200. However, Ms. DiMirco did call Kazak back and informed her that the accounts were locked.

201. Kazak inquired about the wire transfers and Ms. DiMirco stated that Truist would refund the wires upon them posting to her account.

202. During this second telephone call with Ms. DiMirco, Kazak asked if they should call the fraud department.

203. Ms. DiMirco directed Kazak to the number on the back of the debit card.

204. Kazakl called that number (though it was not the fraud department) and again explained the situation and asked to be transferred to the fraud department.

205. After another long wait, Kazak was informed that it was the Zelle fraud department and instructed Kazak to go to her local branch and open new accounts.

206. During that call, Kazak was also told that after 3-5 business days the money would be refunded.

207. Kazak complied with the Truist directive, calling the local branch to schedule an appointment, which was scheduled for January 19, 2022 at 9:00 a.m.

208. After 3 hours at the branch setting up new accounts, the Truist representatives stated that "all the money was refunded and placed back into her old accounts."

Kazak v. Truist Bank
Verified Complaint

209. Thereafter, Ms. DiMirco confirmed that she transferred the money into Plaintiffs' new accounts.

210. On Thursday, January 20, 2022, Kazak set up the new banking accounts online and saw that the money was transferred back out of her account.

211. Kazak immediately called the local Truist branch and spoke with Truist representative, Ms. Peltier, who represented that she would call her back.

212. Ms. Peltier never called Kazak back.

213. On Friday, January 21, 2022, a representative from the Defendant's fraud department contacted Kazak and explained that they had just received the fraud case and would be investigating the matter further.

214. Upon Kazak's request for the funds, the fraud representative represented that neither FDIC regulations nor Regulation E cover wire fraud, but they would try to get their money back.

215. At every juncture Truist representatives failed Plaintiffs.

216. Plaintiffs timely brought the issue to Truist at a time when the matter could be resolved, but the ineffectual response allowed the unauthorized wire transfer from Plaintiffs' accounts.

217. Defendant failed to comply with Plaintiffs' stop payment requests.

218. Defendant failed to timely initiate and complete reasonable error resolution investigations.

219. Defendant lied to Plaintiffs relative to immediately locking the accounts, terminating the wire transfers, stopping payment requests, and immediately contacting the fraud department.

220. As set forth herein, Defendant made knowingly false statements to Plaintiffs.

221. Plaintiffs relied, to their detriment on these statements.

222. As a result of the knowingly false statements, Plaintiffs have been damaged.

Kazak v. Truist Bank
Verified Complaint

223. Plaintiffs' damages, include the loss of account funds, loss of business, and loss of business opportunities.

WHEREFORE, Plaintiffs demand judgment in their favor, including the award of damage, attorneys' fees,  court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

### Count VIII: Violation of Florida's Deceptive and Unfair Trade Practices Act

224. Plaintiffs adopt and reincorporate the allegations set forth in paragraphs 1-55, as if fully set forth herein.

225. Plaintiffs brought the issues set forth herein to Defendant's representative, Ashley DiMirco, via a telephone call.

226. During this call, Kazak instructed Ms. DiMirco to lock Plaintiffs' accounts immediately and to terminate all wire transfers.

227. Ms. DiMirco agreed to lock the accounts immediately and terminate the wire transfers.

228. Ms. DiMirco stated that she would immediately contact the fraud department and call Kazak back.

229. Ms. DiMirco did not follow through with her promises.

230. Ms. DiMirco did not immediately lock the accounts.

231. Ms. DiMirco did not immediately terminate the wire transfers.

232. Ms. DiMirco did not immediately contact the fraud department.

233. However, Ms. DiMirco did call Kazak back and informed her that the accounts were locked.

234. Kazak inquired about the wire transfers and Ms. DiMirco stated that Truist would refund the wires upon them posting to her account.

Kazak v. Truist Bank
Verified Complaint

235. During this second telephone call with Ms. DiMirco, Kazak asked if they should call the fraud department.

236. Ms. DiMirco directed Kazak to the number on the back of the debit card.

237. Kazakl called that number (though it was not the fraud department) and again explained the situation and asked to be transferred to the fraud department.

238. After another long wait, Kazak was informed that it was the Zelle fraud department and instructed Kazak to go to her local branch and open new accounts.

239. During that call, Kazak was also told that after 3-5 business days the money would be refunded.

240. Kazak complied with the Truist directive, calling the local branch to schedule an appointment, which was scheduled for January 19, 2022 at 9:00 a.m.

241. After 3 hours at the branch setting up new accounts, the Truist representatives stated that "all the money was refunded and placed back into her old accounts."

242. Thereafter, Ms. DiMirco confirmed that she transferred the money into Plaintiffs' new accounts.

243. On Thursday, January 20, 2022, Kazak set up the new banking accounts online and saw that the money was transferred back out of her account.

244. Kazak immediately called the local Truist branch and spoke with Truist representative, Ms. Peltier, who represented that she would call her back.

245. Ms. Peltier never called Kazak back.

246. On Friday, January 21, 2022, a representative from the Defendant's fraud department contacted Kazak and explained that they had just received the fraud case and would be investigating the matter further.

Kazak v. Truist Bank
Verified Complaint

247. Upon Kazak's request for the funds, the fraud representative represented that neither FDIC regulations nor Regulation E cover wire fraud, but they would try to get their money back.

248. At every juncture Truist representatives failed Plaintiffs.

249. Plaintiffs timely brought the issue to Truist at a time when the matter could be resolved, but the ineffectual response allowed the unauthorized wire transfer from Plaintiffs' accounts.

250. Defendant failed to comply with Plaintiffs' stop payment requests.

251. Defendant failed to timely initiate and complete reasonable error resolution investigations.

252. Defendant lied to Plaintiffs relative to immediately locking the accounts, terminating the wire transfers, stopping payment requests, and immediately contacting the fraud department.

253. As set forth herein, Defendant made knowingly false statements to Plaintiffs.

254. Plaintiffs relied, to their detriment on these statements.

255. As a result of these deceptive trade practices, Plaintiffs have been damaged.

256. Plaintiffs' damages, include the loss of account funds, loss of business, and loss of business opportunities.

WHEREFORE, Plaintiffs demand judgment in their favor, including the award of damage, attorneys' fees, court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

## DEMAND FOR ATTORNEYS' FEES

Plaintiffs hereby reserve their right to attorneys' fees and costs pursuant to section 57.105, Florida Statute, or as otherwise entitled pursuant to contract or statute.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all counts so triable.

Kazak v. Truist Bank
Verified Complaint

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA
CIVIL DIVISION

LINDA KAZAK and KAZAK REAL ESTATE,
LLC d/b/a KAZAK REAL ESTATE,

Case No.: 22-CA-005316

      Plaintiffs,

v.

TRUIST BANK f/k/a BRANCH BANKING
AND TRUST COMPANY,

      Defendant.

_____/

## SUMMONS

**THE STATE OF FLORIDA:**
**To each Sheriff of the State:**

      **YOU ARE COMMANDED** to serve this summons and a copy of the Complaint in this action on Defendant TRUIST BANK f/k/a BRANCH BANKING AND TRUST COMPANY, by and through its registered agent, officer, director, business agent, employee or statutory agent:

**TRUIST BANK f/k/a BRANCH BANKING AND TRUST COMPANY**
**CORPORATION SERVICE COMPANY, REGISTERED AGENT**
**1201 HAYS STREET**
**TALLAHASSEE, FLORIDA 32301**

      Each defendant is required to serve written defenses to the complaint or petition on Plaintiff's attorney, whose name and address is:  **CHARLES R. GALLAGHER III, ESQUIRE, 5720 Central Avenue, St. Petersburg, Florida 33707**, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the **Clerk of this Court** at **2075 Dr. Martin Luther King Jr. Blvd., Fort Myers, FL 33901 or mail to P.O. Box 310, Fort Myers, FL 33902**, either before service on Plaintiffs' attorney or immediately thereafter. A phone call will not protect you.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

**DATED** on ___12/20/2022___.

**KEVIN C. KARNES**
Lee County Clerk of the Court & Comptroller
2075 Dr. Martin Luther King Blvd.
Fort Myers, FL 33901
(239) 533-5000

**KEVIN C. KARNES**
As Clerk of the Court

By: _Kennedy Harris_
As Deputy Clerk

Page 1 of 3