UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LINDA KAZAK and KAZAK REAL ESTATE, LLC d/b/a KAZAK REAL ESTATE,

     Plaintiffs,

v.

TRUIST BANK f/k/a BRANCH BANKING AND TRUST COMPANY,

     Defendant.

_____/

Case No.: 2:23-cv-00040-SPC-KCD

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW, Plaintiffs, LINDA KAZAK and LINDA KAZAK REAL ESTATE, LLC, by and through their undersigned counsel, and pursuant to the Florida Rules of Civil Procedure, and file this Amended Complaint and Demand for Jury Trial against Defendant, TRUIST BANK f/k/a BRANCH BANKING AND TRUST COMPANY, and in support thereof states as follows:

### Venue & Jurisdiction

1. Plaintiff, LINDA KAZAK ("Kazak"), is a resident of Lee County, Florida, and conducts business in Lee County Florida as a licensed Real Estate Broker.

2. Plaintiff, KAZAK REAL ESTATE, LLC ("Kazak Real Estate"), is an active Florida Limited Liability Company and conducts business in Lee County, Florida

3.   Kazak conducts business in Lee County, Florida as a principal of Kazak Real Estate (collectively "Plaintiffs").

4.   Defendant TRUIST BANK f/k/a BRANCH BANKING AND TRUST COMPANY ("Defendant" or "Truist"), is a Foreign Profit Corporation and conducts business in Lee County, Florida.

5.   Venue is proper in this Court as all acts giving rise to this claim have occurred in Lee County, Florida.

6.   Defendant is subject to personal jurisdiction in Lee County.

7.   The damages in this case presently exceed $30,000.

8.   Plaintiffs satisfied all actions precedent to bringing this action.

## Common Allegations

9.   This case involves the acts and omissions of Defendant in connection with a fraudulent enterprise.

10.   Plaintiffs were legacy account holders of BRANCH BANKING AND TRUST COMPANY's ("BB&T") accounts that were absorbed with the SunTrust and BB&T merger in 2019 that created Truist.

11.   Kazak had two personal bank accounts with Defendant.

12.   Kazak Real Estate had a business bank account with Defendant.

13.   At the time of the account issues herein, Plaintiffs never entered into any prior account agreements with Truist and only executed account agreements with BB&T in Lee County, Florida.

14. Plaintiffs were the victims of a cybercrime fraud enterprise, which included Defendant, which allowed third parties to gain control of their accounts and deplete the account contents in amounts exceeding $112,000.00.

15. This included two transfers, one from each of Kazak's personal accounts, into the Kazak Real Estate account in the amounts of $11,720.00 and $1,400.00.

16. Plaintiffs made immediate contact to Truist to report the fraud, at a time when the accounts could be frozen and the fraudulent wire transfers could be terminated/recaptured.

17. However, despite this notice to Truist within an hour of the fraud, Truist did nothing and did not follow its own fraud response protocols.

18. On January 18, 2022 at 11:40 a.m., Kazak received a call from Defendant's consumer fraud division at 1-800-226-5228.

19. The call was disconnected, but Kazak called back to confirm that it was a legitimate number (it was in fact a Truist number, and is currently a valid Truist customer service number).

20. The fraud department called back at 11:42 a.m. and the call lasted for 48 minutes.

21. During this time, Kazak was told that there were fraudulent charges on her account: $.99 and $127.43 from Target and $355.15 from Walmart.

22. The representative stated that the charges were declined but Truist needed to lock the account and change the password.

23. Kazak did not give any identification information but informed the representative that she needed to change the password; the representative sent several one-time passcodes to her phone during this 48-minute call.

24. When finished, the fraud department representative gave Kazak a reference number of BBT01182275.

25. Immediately after hanging up, Kazak received an email from Truist at 12:13 p.m. stating that Plaintiffs were enrolled in wire transfer services.

26. Plaintiffs did not initiate any wire transfers.

27. Kazak attempted to call the number listed on the email (844-487-8478). A number that is currently a Truist customer service number.

28. Kazak was put on hold for almost 15 minutes.

29. Due to the long hold time, Kazak hung up and called a local branch.

30. During her call to the local branch, Kazak spoke with relationship manager, Ashley DiMirco ("DiMirco"), and explained the situation.

31. During the call, Kazak instructed DiMirco to lock her accounts immediately and terminate all wire transfers.

32. DiMirco agreed to lock the accounts immediately and terminate the wire transfers.

33. DiMirco stated that she would immediately contact the fraud department and call Kazak back.

34. DiMirco did not follow through with her promises.

35. DiMirco did not immediately lock the accounts.

4

36. DiMirco did not immediately terminate the wire transfers.

37. DiMirco did not immediately contact the fraud department.

38. However, DiMirco did call Kazak back and informed her that the accounts were locked.

39. Kazak inquired about the wire transfers and DiMirco stated that Truist would refund the wires upon them posting to her account.

40. During this second telephone call with DiMirco, Kazak asked if they should call the fraud department.

41. DiMirco directed Kazak to the number on the back of the debit card.

42. Kazak called that number (though it was not the fraud department) and again explained the situation and asked to be transferred to the fraud department.

43. After another long wait, Kazak was informed that it was the Zelle fraud department and instructed Kazak to go to her local branch and open new accounts.

44. During that call, Kazak was also told that after 3-5 business days the money would be refunded.

45. Kazak complied with the Truist directive, calling the local branch to schedule an appointment, which was scheduled for January 19, 2022 at 9:00 a.m.

46. After 3 hours at the branch setting up new accounts, the Truist representatives stated that "all the money was refunded and placed back into her old accounts."

47. Thereafter, DiMirco confirmed that she transferred the money into Plaintiffs' new accounts.

48. On Thursday, January 20, 2022, Kazak set up the new banking accounts online and saw that the money was transferred back out of her account.

49. Kazak immediately called the local Truist branch and spoke with Truist representative and VP, Shelby Peltier ("Peltier"), who stated that she would call her back.

50. Peltier never called Kazak back.

51. On Friday, January 21, 2022, a representative from the Defendant's fraud department contacted Kazak and explained that they had *just received* the fraud case and would be investigating the matter further.

52. Upon Kazak's request for the funds, the fraud representative represented that neither FDIC regulations nor Regulation E cover wire fraud, but they would try to get their money back.

53. At every juncture Truist representatives failed Plaintiffs.

54. Plaintiffs timely brought the issue to Truist at a time when the matter could be resolved, but the ineffectual response allowed the unauthorized wire transfer from Plaintiffs' accounts.

55. Defendant failed to comply with Plaintiffs' stop payment requests.

56. Defendant failed to timely initiate and complete reasonable error resolution investigations.

57. Defendant lied to Plaintiffs relative to immediately locking the accounts, terminating the wire transfers, stopping payment requests, and immediately contacting the fraud department.

58. Defendant failed to follow any commercially reasonable security procedures regarding its actions with Plaintiffs prior to or following Plaintiffs' notice to Defendant.

59. As a result of Defendant's omissions, Plaintiffs have been damaged.

## Count I: Breach of Contract[1]
## LINDA KAZAK

60. Kazak adopts and reincorporate the allegations set forth in paragraphs 1-59, as if fully set forth herein.

61. Kazak and Defendant were parties to a written contract known Agreements.[2]

62. Kazak had Agreements with Defendant's predecessor BB&T.

63. The Agreements governed all matters among Kazak and Defendant.

64. Under these Agreements, Defendant has obligations to honor cancel pay requests made by Kazak.

65. Under these Agreements, Defendant has obligations to refund moneys fraudulently transferred out of accounts.

66. Kazak made cancel pay requests to Defendant as set forth herein.

67. Defendant told Kazak that it would honor the cancel pay requests.

---

[1] Common law claims and claims for violation of the UCC are permissible against a bank. *See, e.g.*, *Coast to Coast Supply Sols., LLC v. Bank of Am., Corp*., 8:20-CV-606-T-60AEP, 2020 WL 2494487, at *3 (M.D. Fla. May 14, 2020).

[2] Plaintiffs are not in possession of the contracts. The contract is in the possession of Defendant. As a matter of law, the pleader need not attach a copy of the contract, and "…where the instrument is not within the pleader's possession or control…such failure to attach should not be fatal to the cause." *Sachse v. Tampa Music Co*., 262 So. 2d 17 (Fla. 2nd DCA 1972) (citations omitted). Further, "…post pleading, pretrial discovery methods as depositions, request for admissions and interrogatories can be used by the plaintiff to show that there was a… contract between the defendant and another party." *Id.* (citation omitted).

68. Defendant failed to comply with the cancel pay directives.

69. Kazak made requests to Defendant to reverse the fraudulent transfers from her personal bank accounts.

70. Defendant failed to reverse the fraudulent transfers from Kazak's personal bank accounts.

71. As a result of Defendant's failure to comply with the cancel pay directives, Defendant has breached the Agreements with Kazak.

72. As a result of Defendant's failure to reverse the fraudulent transfers, Defendant has breached the Agreements with Kazak.

73. As a result of Defendant's breach, Kazak has incurred profound damages, including the loss of the account balances.

WHEREFORE, Plaintiff demands judgment in her favor, including the award of damages, attorneys' fees, pursuant to statute or contract, court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

### Count II: Breach of Contract
### KAZAK REAL ESTATE, LLC d/b/a KAZAK REAL ESTATE

74. Kazak Real Estate adopts and reincorporates the allegations set forth in paragraphs 1-59, as if fully set forth herein.

75. Kazak Real Estate and Defendant were parties to a written contract known Agreements.[3]

---

[3] Plaintiffs are not in possession of the contracts. The contract is in the possession of Defendant. As a matter of law, the pleader need not attach a copy of the contract, and "…where the instrument is not within the pleader's possession or control…such failure to attach should not be fatal to the cause." *Sachse v. Tampa Music Co.*, 262 So. 2d 17 (Fla. 2nd DCA 1972) (citations omitted). Further, "…post pleading, pretrial discovery methods as depositions, request for

76. Kazak Real Estate had Agreements with Defendant's predecessor BB&T.

77. The Agreements governed all matters among Kazak Real Estate and Defendant.

78. Under these Agreements, Defendant has obligations to cancel pay requests made by Kazak Real Estate.

79. Kazak Real Estate made cancel pay requests regarding the wire transfers to Defendant as set forth herein.

80. Defendant promised to terminate the wire transfers.

81. Defendant failed to comply with the cancel pay directives and terminate the wire transfers.

82. As a result of Defendant's failure to comply with the cancel pay directives and to terminate the wire transfers, Defendant has breached the Agreements with Kazak Real Estate.

83. As a result of Defendant's breach, Kazak Real Estate has incurred profound damages, including the loss of the account balances.

WHEREFORE, Kazak Real Estate demands judgment in its favor, including the award of damages, attorneys' fees, pursuant to contract and statute, court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

---

admissions and interrogatories can be used by the plaintiff to show that there was a… contract between the defendant and another party." *Id.* (citation omitted).

## Count III: Breach of the Contractual Obligation of Good Faith and Fair Dealing
### LINDA KAZAK

84. Kazak adopts and reincorporates the allegations set forth in paragraphs 1-59 and 60-73, as if fully set forth herein.

85. Kazak and Defendant were parties to written contracts known as Agreements.

86. Kazak had Agreements with Defendant's predecessor BB&T.

87. The Agreements governed all matters among Plaintiffs and Defendant.

88. Under the Agreements, Defendant had an obligation to cancel pay requests made by Plaintiffs.

89. Under the Agreements, Defendant had an obligation to follow its procedures regarding fraud claims.

90. Plaintiffs made cancel pay requests to Defendant as set forth herein.

91. Defendant promised to enact the cancel pay requests and reverse the fraudulent transfer of funds from Kazak's personal accounts into Kazak Real Estate business accounts.

92. Defendant failed to comply with the cancel pay directives and reverse the fraudulent transfer of funds from Kazak's personal accounts.

93. As a result of Defendants failure to comply with the cancel pay directives and reverse the fraudulent transfer of funds, Defendant breached the Agreements.

94. As a result of the above, Defendant breached the contractual obligation of good faith and fair dealing to Plaintiffs.

95. As a result of Defendant's breach, Kazak incurred profound damages resulting from the loss of money from her accounts.

WHEREFORE, Kazak demand judgment in their favor, including the award of damages, attorneys' fees, pursuant to contract or statute, court costs, and for such other and further relief as this Court deems equitable, proper, and just.

## Count IV: Breach of the Contractual Obligation of Good Faith and Fair Dealing
### KAZAK REAL ESTATE, LLC d/b/a KAZAK REAL ESTATE

96. Kazak Real Estate adopts and reincorporates the allegations set forth in paragraphs 1-59 and 77-83, as if fully set forth herein.

97. Kazak Real Estate and Defendant were parties to written contracts known as Agreements.

98. Kazak Real Estate had Agreements with Defendant's predecessor BB&T.

99. The Agreements governed all matters among Kazak Real Estate and Defendant.

100. Under the Agreements, Defendant had an obligation to cancel pay requests made by Kazak Real Estate.

101. Under the Agreements, Defendant had an obligation to follow its procedures regarding fraud claims.

102. Kazak Real Estate made cancel pay requests to Defendant as set forth herein.

103. Kazak Real Estate promised to enact the cancel pay requests and terminate the wire transfers.

104. Defendant failed to comply with the cancel pay directives.

11

105. As a result of Defendants failure to comply with the cancel pay directives and terminate the wire transfers, Defendant breached the Agreements.

106. As a result of the above, Defendant breached the contractual obligation of good faith and fair dealing to Kazak Real Estate.

107. As a result of Defendant's breach, Kazak Real Estate incurred profound damages resulting from the loss of money from its accounts.

WHEREFORE, Kazak Real Estate demands judgment in its favor, including the award of damages, attorneys' fees, pursuant to contract or statute, court costs, and for such other and further relief as this Court deems equitable, proper, and just.

### Count V: Negligence[4]
### KAZAK REAL ESTATE, LLC d/b/a KAZAK REAL ESTATE

108. Plaintiff adopts and reincorporates the allegations set forth in paragraphs 1-59, as if fully set forth herein.

109. Defendant owed a duty to Plaintiff, as its customer, to provide a commercially reasonable method of providing security against unauthorized payment orders.

110. Defendant breached its duty to Plaintiff by failing to maintain a commercially reasonable method of providing security against unauthorized payment orders.

111. Defendant further breached its duty to Plaintiff by failing to mark, note, or otherwise flag suspicious activity when wire transfer requests were received initiating payment to random entities even though Plaintiff had never

---

[4] It is permissible to have a breach of contract count and a negligence count without violating the independent tort doctrine. *See Coast to Coast Supply Sols., LLC v. Bank of Am., Corp.*, 8:20-CV-606-T-60AEP, 2020 WL 2494487, at *2 (M.D. Fla. May 14, 2020).

previously made any wire transfers and Plaintiff had never done business with the entities or persons funds were transferred.

112. Defendant further breached its duty to Plaintiff by failing to follow through with promises made to Plaintiff by Defendant's agent DiMirco that Plaintiffs' accounts would immediately be locked and all wire transfers would immediately be terminated.

113. Defendant further breached its duty to Plaintiff by failing to follow through with promises made to Plaintiffs by Defendant's agent DiMirco that Truist would refund the wires upon them posting to her account.

114. Defendant further breached its duty to Plaintiff by transferring the money out of Plaintiff new banking accounts.

115. Defendant further breached its duty to Plaintiff by improperly investigating the matter further.

116. At every juncture Truist representatives failed Plaintiff.

117. Plaintiff timely brought the issue to Truist at a time when the matter could be resolved, but the ineffectual response allowed the unauthorized wire transfer from Plaintiff's accounts.

118. Defendant failed to comply with Plaintiff's stop payment requests and terminate the fraudulent transfers between accounts and the fraudulent wire transfers.

119. Defendant failed to timely initiate and complete reasonable error resolution investigations.

120. Defendant lied to Plaintiff relative to immediately locking the accounts, terminating the wire transfers, stopping payment requests, and immediately contacting the fraud department.

121. As a result of Defendant's omissions, Plaintiff has been damaged.

122. Defendant, through its agents DiMirco and Peltier, had a duty to Plaintiff to act with due care to address Plaintiff's requests and concerns.

123. Defendant breached that duty as set forth above by ignoring Plaintiff's stop payment directives, by not following through with its representations to terminate all wire transfers, and by not locking Plaintiffs' accounts as promised.

124. As a proximate cause of Defendant's breach of its duty to Plaintiff, Plaintiff has incurred actual loss of the unrecovered sum of $112,000.00, loss of business, and loss of business opportunities.

WHEREFORE, Plaintiff demands judgment in its favor, including the award of damages, attorneys' fees, court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

### Count V: Breach of Fiduciary Duty
**KAZAK and KAZAK REAL ESTATE, LLC d/b/a KAZAK REAL ESTATE**

125. Plaintiffs adopts and reincorporates the allegations set forth in paragraphs 1-59, as if fully set forth herein.

126. Defendant owed Plaintiffs a fiduciary duty under these facts.

127. Defendant entered a banking relationship with Plaintiffs, with whom it has established a confidential or fiduciary relationship.

128. This transaction is one from which Defendant stands to benefit at the expense of the customer, Plaintiffs, relative to the recapture of funds, funds Defendant represented would be returned.

129. After learning about the fraud/wire transfer issue, Kazak called Defendant's local branch and spoke with relationship manager, Ashley DiMirco, and explained the situation.

130. During the call, Kazak instructed DiMirco to lock her accounts immediately and terminate all wire transfers.

131. DiMirco agreed to lock the accounts immediately and terminate the wire transfers.

132. DiMirco stated that she would immediately contact the fraud department and call Kazak back.

133. By agreeing to lock Plaintiffs' accounts immediately and terminate the wire transfers, and promising to immediately contact the fraud department, Defendant created a duty to act in a manner consistent with Plaintiffs' best interests.

134. DiMirco did not follow through with her promises.

135. DiMirco did not immediately lock the accounts.

136. DiMirco did not immediately terminate the wire transfers.

137. DiMirco did not immediately contact the fraud department.

138. However, DiMirco did call Kazak back and informed her that the accounts were locked.

15

139. Kazak inquired about the wire transfers and DiMirco stated that Truist would refund the wires upon them posting to her account.

140. During this second telephone call with DiMirco, Kazak asked if they should call the fraud department.

141. DiMirco directed Kazak to the number on the back of the debit card.

142. Kazak called that number (though it was not the fraud department) and again explained the situation and asked to be transferred to the fraud department.

143. After another long wait, Kazak was informed that it was the Zelle fraud department and instructed Kazak to go to her local branch and open new accounts.

144. During that call, Kazak was also told that after 3-5 business days the money would be refunded.

145. Kazak complied with the Truist directive, calling the local branch to schedule an appointment, which was scheduled for January 19, 2022 at 9:00 a.m.

146. After 3 hours at the branch setting up new accounts, the Truist representatives stated that "all the money was refunded and placed back into her accounts."

147. Thereafter, DiMirco confirmed that she transferred the money into Plaintiffs' new accounts.

148. On Thursday, January 20, 2022, Kazak set up the new banking accounts online and saw that the money was transferred back out of her accounts.

149. Kazak immediately called the local Truist branch and spoke with Truist representative, Peltier, who stated that she would call her back.

16

150. Peltier never called Kazak back.

151. On Friday, January 21, 2022, a representative from the Defendant's fraud department contacted Kazak and explained that they had just received the fraud case and would be investigating the matter further.

152. Upon Kazak's request for the funds, the fraud representative represented that neither FDIC regulations nor Regulation E cover wire fraud, but they would try to get their money back.

153. The acts and omissions of Defendant above amount to a breach of fiduciary duty.

154. Plaintiffs timely brought the issue to Truist at a time when the matter could be resolved, but the ineffectual response allowed the unauthorized wire transfer from Plaintiffs' accounts.

155. Defendant failed to comply with Plaintiffs cancel payment requests.

156. Defendant failed to timely initiate and complete reasonable error resolution investigations.

157. Defendant lied to Plaintiffs relative to immediately locking the accounts, terminating the wire transfers, stopping payment requests, and immediately contacting the fraud department.

158. Defendant's actions and/or omissions to follow through with its promises regarding locking Plaintiffs' accounts, terminating the fraudulent wire transfers, contacting the fraud department, and following proper procedures breached Defendant's fiduciary duty to Plaintiffs.

159. As a result of this breach, Plaintiffs have been damaged.

160. Plaintiffs' damages, include the loss of account funds, loss of business, and loss of business opportunities.

WHEREFORE, Plaintiffs demands judgment in their favor, including the award of damage, attorneys' fees, pursuant to contract and/or statute, court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

### Count VI: Noncompliance with Security Procedures
### in Violation of § 670.202(2), Florida Statutes
### KAZAK and KAZAK REAL ESTATE, LLC d/b/a KAZAK REAL ESTATE

161. Plaintiffs adopt and reincorporate the allegations set forth in paragraphs 1-59, as if fully set forth herein.

162. Defendant is a Bank engaged in the business of banking, as defined in § 670. 105(l)(b), Florida Statutes.

163. Plaintiffs have accounts with Defendant and are customers of Defendant, as defined in § 670.105(1)(c), Florida Statutes.

164. Plaintiffs have never initiated any wire transfers.

165. Defendant has set security procedures regarding payment orders and transfers of funds.

166. Defendant failed to comply with the security procedures, as required by § 670.202(2), Florida Statutes, and by the contract when it failed to act properly in terminating the funds transfers totaling $112,000.00.

167. The circumstances of Plaintiffs were known to Defendant, as Plaintiffs had never previously made any wire transfers.

18

168. Plaintiffs were harmed as a result of Defendant's failure to comply with the security procedures.

169. The harm Plaintiffs have incurred includes, but is not limited to, actual loss of the sum of $112,000.00.

170. Plaintiffs are entitled to recovery and refund from Defendant of the unauthorized payment orders in the amount of $112,000.00, with interest, pursuant to § 670.204, Florida Statutes.

WHEREFORE, Plaintiffs demand judgment in their favor, including the award of damages, interest, attorneys' fees, court costs and, and for such other and further relief as this Court deems equitable, proper, and just.

**Count VII: Failure to Maintain Commercially Reasonably Security Procedures**
**in Violation of § 670.202(3), Florida Statutes**
**KAZAK and KAZAK REAL ESTATE, LLC d/b/a KAZAK REAL ESTATE**

171. Plaintiffs adopt and reincorporate the allegations set forth in paragraphs 1-59, as if fully set forth herein.

172. Defendant is a Bank engaged in the business of banking, as defined in § 670.105(l)(b), Florida Statutes.

173. Plaintiffs have accounts with Defendant and are customers of Defendant, as defined in § 670.105(1)(c), Florida Statutes.

174. Defendant and Plaintiffs did not have a security procedure established for the purpose of (a) verifying that a payment order or communication amending or canceling a payment order is that of Kazak Real Estate's, and (b) detecting error in the transmission or the content of the payment order or communication, as

19

defined by § 670.201, Florida Statutes, as Plaintiffs had never previously made any wire transfers or payment orders.

175. The circumstances of Plaintiffs were known to Defendant, including the size, type, and frequency of payment orders normally issued by Plaintiffs to Defendant. *See* § 670.202, Fla. Stat.

176. Defendant did not offer alternative security procedures to Plaintiffs. *See* § 670.202(3), Fla. Stat.

177. Defendant failed to maintain a commercially reasonable method of providing security against unauthorized payment orders. *See* § 670.202(3), Fla. Stat.

178. Plaintiffs were harmed as a result of Defendant's acts and omissions in violation of § 670.202(3), Florida Statutes.

179. The harm Plaintiffs have incurred includes, but is not limited to, actual loss of the sum of $112,000.00.

180. Plaintiffs are entitled to recovery and refund from Defendant of the unauthorized payment order in the amount of $112,000.00, with interest, pursuant to § 670.204, Florida Statutes.

WHEREFORE, Plaintiffs demand judgment in their favor, including the award of damages, interest, attorneys' fees, costs and, and for such other and further relief as this Court deems equitable, proper, and just.

## DEMAND FOR ATTORNEYS' FEES

Plaintiffs hereby reserve their right to attorneys' fees and costs pursuant to section 57.105, Florida Statute, or as otherwise entitled pursuant to contract or statute.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all counts so triable.

## DESIGNATION OF E-MAIL ADDRESSES

Pursuant to Florida Rules of General Practice and Judicial Administration 2.516, the undersigned counsel designates the following primary and secondary electronic mail ("e-mail") addresses for the purpose of service of all documents required to be served pursuant to Rule 2.516 in this proceeding:

**Primary E-Mail:**      Service@attorneyoffices.org
**Secondary E-Mail:**  Fax@attorneyoffices.org

Please note that service by e-mail should utilize both e-mail addresses. ***You are hereby notified that pleadings and/or documents which are not served to the e-mail addresses above will not be considered properly served per Rule 2.516 of the Florida Rules of General Practice and Judicial Administration.***  If service of hard copies is to be made in addition to e-mail service pursuant to Rule 2.516(b)(2) of the Florida Rules of General Practice and Judicial Administration, counsel requests that the copies be served at the physical address listed below.

/s/     *Charles R. Gallagher III*
CHARLES R. GALLAGHER III, ESQ.
Florida Bar No.:  0510041
E-Mail:  crg@attorneyoffices.org
Gallagher & Associates Law Firm, P.A.
5720 Central Avenue
St. Petersburg, FL 33707
Telephone: (727) 344-5297
*Primary E-Mail:  service@attorneyoffices.org*
*Secondary E-Mail:  fax@attorneyoffices.org*
Scheduling:  *christine@attorneyoffices.org*
Counsel for Plaintiffs

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of April, 2023, the foregoing was electronically filed with the CM/ECF portal, which will send a notice of electronic filing to the following:   **Nicholas S. Agnello, Esquire**, Burr & Forman, LLP, 420 North 20th Street, Suite 3400, Birmingham, AL 35203, (*flservice@burr.com; nagnello@burr.com; rzamora@burr.com*), ***Counsel for Defendant***.

/s/     *Charles R. Gallagher III*
CHARLES R. GALLAGHER III, ESQ.