UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LINDA KAZAK and KAZAK REAL
ESTATE, LLC,

    Plaintiffs,

v.                                                    Case No.:  2:23-cv-40-SPC-KCD

TRUIST BANK,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Defendant Truist Bank's Amended Motion to Dismiss Plaintiffs' Amended Complaint. (Doc. 37). Plaintiffs Linda Kazak and Kazak Real Estate, LLC oppose. (Doc. 40). For the following reasons, the Court denies Truist's motion.

### BACKGROUND[1]

This case centers around a fraudulent wire transfer. Plaintiffs had bank accounts at Branch Banking and Trust Company ("BB&T"), which merged with SunTrust and created Defendant Truist. As banking customers, Plaintiffs had written contracts, which they call Agreements, with Truist. (Doc. 34 at 61-63).

---

[1] These are the relevant facts as alleged by the Plaintiffs in their amended complaint. (Doc. 34).

On January 18, 2022, Kazak received a call from what she thought was the Truist fraud department—a valid Truist number. Kazak says she did not give any identification information but the representative she spoke with sent several one-time passcodes to her phone. After the call, Kazak received an email from Truist saying Plaintiffs' accounts were enrolled in wire transfer services. Kazak never initiated any wire transfers.

Kazak then took several immediate steps to alert Truist that her account may have been compromised—and indeed third parties gained control of Plaintiffs' accounts and took over $112,000. She called the Truist number in the email. While on hold, she called Ashley DiMirco, the relationship manager at the local branch, and instructed her to lock Plaintiffs' accounts and terminate all wire transfers. DiMirco said she did and would contact the fraud department. Kazak asked about notifying the fraud department herself and DiMirco directed Kazak to the number on the back of her debit card. That number turned out to be the Zelle fraud department, which instructed Kazak to go to her local branch and open new accounts.

The following day, Kazak opened new accounts at her local branch. Multiple times Truist told Kazak it would refund the money taken by the fraudulent wire transfers. This did not happen. And the Truist fraud department told Kazak they didn't get her case until three days after she first alerted Truist to the issue.

Plaintiffs sue, each alleging (1) breach of contract, (2) breach of contractual obligation of good faith and fair dealing, (3) breach of fiduciary duty, and (4) noncompliance with security procedures in violation of Fla. Stat. §§ 670.202(2) and (3). Kazak Real Estate alleges a further count of negligence. Truist moves to dismiss.

## LEGAL STANDARD

A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Twombly*, 550 U.S. at 555. A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Twombly*, 550 U.S. at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted

3

unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

When considering dismissal, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## DISCUSSION

Truist raises a myriad of arguments in its motion to dismiss. It argues: (1) Plaintiffs' breach of contract and implied covenant of good faith and fair dealing claims fail because Plaintiffs do not identify the agreements with enough specificity and the agreements themselves foreclose these claims; (2) Article 4A of the Uniform Commercial Code ("UCC") preempts Plaintiffs' common law claims; and (3) Plaintiffs do not plausibly state claims for negligence, breach of fiduciary duty, and UCC claims. Finally, Truist argues Plaintiffs' demand for a jury trial is contrary to the parties' agreement, so it must be stricken. Plaintiffs oppose.[2] The Court takes each in turn.

---

[2] The Court notes that Plaintiffs also say Truist's motion to dismiss should be denied because it fails to comply with Local Rule 3.01(a): (1) it exceeded the page limit, and (2) it consisted of two documents rather than a single document. Truist's motion to dismiss is two pages too long. M.D. Fla. R. 3.01(a). Moving forward, Truist must ensure it stays within the page limit or seeks leave of the Court to exceed it. But a clear review of the docket shows the motion to dismiss unintentionally consisted of two documents—Truist attempted to file Doc. 38-1 as an Exhibit D to Doc. 37 (Doc. 37-4), but an error occurred rendering Doc. 37-4 blank. The Court finds it inappropriate to penalize Truist for correcting the error by filing that attachment as Doc. 38-1.

**A. The Agreements**

Truist argues Plaintiffs' breach of contract and implied covenant of good faith and fair dealing claims fail because Plaintiffs do not identify the agreements with enough specificity. The Court disagrees. Plaintiffs had bank accounts at Truist. They claim the parties had a written contract—the agreements—that govern all matters between the parties. (Doc. 34 at 61-63, 75-77). Plaintiffs allege the agreements contain obligations to honor cancel pay request, and refund money fraudulently transferred out of accounts. (Doc. 34 at 64-65, 78-79). The Court finds this gives Truist fair notice of the breach of contract and implied covenant of good faith and fair dealing claims and the grounds upon which they rest and creates plausible breach of contract and implied covenant of good faith and fair dealing claims. *See Twombly*, 550 U.S. at 555.

Next Truist argues the agreements foreclose the breach of contract and implied covenant of good faith and fair dealing claims. While the agreements are not attached to Plaintiffs' complaint, Truist attaches to its motion to dismiss an Online and Mobile Banking for Business Service Agreement ("OBBA") (Doc. 37-1) and Commercial Bank Services Agreement ("CBSA"), which it says governs Kazak Real Estate's business account, and an Online Banking Agreement ("OBA") and Bank Services Agreement ("BSA"), which it says governs Kazak's personal account (collectively "the agreements.").

Truist's argument is misplaced at this motion to dismiss stage. When faced with such a motion, courts limit their review to the allegations in the complaint. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). To consider materials beyond the pleading, courts must convert a motion to dismiss into a motion for summary judgment. *Id.* at 175-76. But there is an exception. No conversion is needed if a document is "referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018).

Truist claims the Court can consider the agreements because they are central to Plaintiffs' claims and "their authenticity is undisputed." (Doc. 37 at n.2). Not so. Plaintiffs *do* dispute the agreements' authenticity. According to Plaintiffs, the attachments are "not the operative agreements." (Doc. 40 at Pg. 5). Further, none are signed by Plaintiffs, and it is unclear the dates Plaintiffs may have agreed to them. (Doc. 37-2; Doc. 37-3; Doc. 38-1). So the Court will not consider the agreements at this stage. *See, e.g., Thompson v. City of St. Cloud*, No. 6:23-cv-283-WWB-LHP, 2023 WL 3931952, at *2 (M.D. Fla. June 9, 2023) (finding defendants did not satisfy the incorporation-by-reference doctrine because, in part, the plaintiff did not concede the authenticity to extrinsic videos); *Palm Devs., Inc. v. Ridgdill & Sons, Inc.*, No. 2:08-cv-322-FTM-DNF, 2009 WL 513027, at *3 (M.D. Fla. Feb. 27, 2009) (declining to

convert a motion to dismiss to one for summary judgment when the plaintiff claimed some dispute over the documents attached to the motion).

One further point: without considering the agreements, Truist's arguments that the agreements bar Plaintiffs' negligence, breach of fiduciary duty, and UCC claims must also fail.

**B. UCC Preemption**

Truist argues all of Plaintiffs' common law claims are preempted by Article 4A of the Uniform Commercial Code. Article 4A, codified in Florida Statutes § 670.102, et seq., "controls how electronic funds transfers are conducted and specifies certain rights and duties related to the execution of such transactions." *Valdes v. Customers Bank, Inc.*, No. 8:19-CV-2603-T-33AEP, 2020 WL 13357817, at *2 (M.D. Fla. Feb. 10, 2020) (cleaned up). "Parties whose conflict arises out of a funds transfer should look first and foremost to Article 4A for guidance in bringing and resolving their claims." *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274 (11th Cir. 2003) (cleaned up).

But "Article 4A is not the exclusive means by which a plaintiff can seek to redress an alleged harm arising from a funds transfer." *Regions*, 345 F.3d at 1274-75 (quotation omitted). "Claims that, for example, are not about the mechanics of how a funds transfer was conducted may fall outside of this regime." *Valdes v. Customers Bank, Inc.*, No. 8:19-cv-2603-T-33AEP, 2020 WL

7

13357817, at *4 (M.D. Fla. Feb. 10, 2020) (quoting *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 89 (2d Cir. 2010)).  Simply put, when an issue does not clearly fit within the UCC. provisions, common law claims may supplement the UCC if they would not create rights, duties, or liabilities inconsistent with the UCC.  *See Regions*, 345 F.3d at 1274-75.

Importantly, two related but separate allegations of Truist wrongdoing form the basis of Plaintiffs' complaint.  First, Kazak claims Truist's normal security procedures failed to stop third parties from obtaining Plaintiffs' account information and taking money.  With only this, Kazak's common law claims would be preempted under the UCC.  *See Peter E. Shapiro, P.A. v. Wells Fargo Bank N.A.*, 795 F. App'x 741, 750 (11th Cir. 2019) (finding no error in decision Article 4A preempted negligence claim because complaint alleged no negligence beyond the scope of the erroneous funds transfer); *Capten Trading Ltd. v. Banco Santander Int'l*, No. 17-20264-CIV, 2018 WL 1558272, at *4 (S.D. Fla. Mar. 29, 2018) (finding Florida's UCC precluded common law negligence claim where Plaintiff's claims "at bottom ... rest on [Plaintiff's] allegations that the Bank mishandled unauthorized wire transfer requests.").

But there is a second alleged wrongdoing.  Kazak claims she immediately told Truist about the compromised accounts "at a time when the accounts could be frozen and the fraudulent wire transfers could be terminated/recaptured." (Doc. 34 at 16).  The complaint details the steps Kazak took to inform Truist of

the compromised accounts, the promises Truist's representative made to lock the account and terminate any wire transfers, and allegations Truist did not keep these promises. (Doc. 34 at 16-17, 27-47, 51, 54-57). This alleged wrongdoing extends beyond the passive mechanics of how a funds transfer was conducted and falls outside the UCC regime. *See Peach State Bank & Tr. v. Wells Fargo Bank Nat'l Ass'n (Inc.)*, No. 2:18-CV-00126-RWS, 2019 WL 13224780, at *3 (N.D. Ga. June 20, 2019) (finding no preemption where Plaintiff's claims were based on allegations that Defendant allowed withdrawals after it knew or should have known a transaction was fraudulent). Further, allowing these claims is consistent with the UCC. *See Anderson v. Branch Banking & Tr. Co.*, 119 F. Supp. 3d 1328, 1358 (S.D. Fla. 2015) (finding Plaintiffs' negligence theory consistent with the rights, duties, and obligations under the U.C.C. when Defendant's lack of care exceeded simple objections to unauthorized funds).

At a later dispositive motion stage, with the benefit of a more developed record, the uncontested facts may support preemption. But at this motion to dismiss stage, the Court is tied to Plaintiffs' allegations of fact and all plausible claims from them. *See Anderson v. Branch Banking & Tr. Co.*, 119 F. Supp. 3d 1328, 1349 (S.D. Fla. 2015) (noting factual issues at a motion to dismiss stage may obviate the court's ability to assess preemption).

**C. Failure to State Claims**

9

Truist challenges Plaintiffs' negligence, breach of fiduciary duty, and UCC claims for failure to state a claim. For both negligence and breach of fiduciary duty, Truist argues Plaintiffs fail to meet the essential elements of a duty (negligence) and a fiduciary duty owed to Plaintiffs.

An essential element of Plaintiffs' negligence and breach of fiduciary duty claims are a duty and fiduciary duty respectively owed by Truist to Plaintiffs. *See Jenkins v. W.L. Roberts, Inc.*, 851 So. 2d 781, 783 (Fla. 1st DCA 2003) ("The duty element of negligence is a threshold legal question; if no legal duty exists, then no action for negligence may lie."); *Bahmann v. N.A.*, No. 6:23-CV-1303-PGB-EJK, 2023 WL 5573820, at *2 (M.D. Fla. Aug. 29, 2023).

The Court begins with negligence. Truist claims that the only duty Kazak Real Estate identifies for the negligence claim is the duty to provide a commercially reasonable method of providing security against unauthorized payment orders. Not so. Plaintiffs explicitly state Truist, through its representatives, had a duty "to act with due care to address Plaintiff's requests and concerns." (Doc. 34 at 122-123). This goes beyond the duty to provide a commercially reasonable method of providing security against unauthorized payment orders and Truist fails to address this. So Truist has not shown Plaintiffs' negligence claim is barred by the independent tort doctrine. *See Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So.2d 518, 519 (Fla. 3d DCA 1986) ("[A] breach of contract, *alone*, cannot constitute a cause of action in

tort.... It is only when the breach of contract *is attended by some additional conduct* which amounts to an independent tort that such breach can constitute negligence.") (emphasis added) (cleaned up).

Turning to fiduciary relationships, these may be expressly created, such as through a contract, or impliedly created. *Cap. Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. Dist. Ct. App. 1994). Here, Plaintiffs allege an implied fiduciary relationship. (Doc. 34 at 126) ("Defendant owed Plaintiffs a fiduciary duty under these facts."). "Fiduciary relationships implied in law are premised upon the specific situation surrounding the transaction and the relationship of the parties." *Cap. Bank*, 644 So. 2d at 518. Courts have found a fiduciary relation implied in law when "confidence is reposed by one party and a trust accepted by the other." *Id*.

The relationship between a bank and its borrower is generally that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities. *Cap. Bank*, 644 So. 2d at 518. But exceptions exist. *Id*. (collecting cases). For example, a fiduciary relationship may be imposed where a lender takes on extra services for a customer. *Id*.

Here, Kazak's attempts to notify Truist of the compromised accounts and the promises Truist's representative DiMirco allegedly made are detailed in Plaintiffs' complaint. (Doc. 34 at 16-17, 27-47, 51, 54-57). These facts plausibly created a fiduciary relationship because DiMirco promised to take certain steps

11

to safeguard Plaintiffs' accounts. Whether this claim will ultimately survive is too close a factual question to be determined now.

The Court next addresses Truist's arguments on Plaintiffs' UCC claims. Truist says they fail because the specific section Plaintiffs cite (Fla. Stat. § 670.202) does not impose liability on Truist so it cannot serve as a stand-alone claim and Plaintiffs fail to plead certain elements of § 670.202. While Plaintiffs' headings on these counts exclusively say § 670.202, the language of the counts states that Plaintiffs are entitled to recovery and refund pursuant to § 670.204. (Doc. 34 at 170, 180). Truist makes no argument this section does not impose liability or Plaintiffs have not pled the requirements for that section, so the Court will allow Plaintiffs' UCC claims to proceed.

**D. Jury Demand**

Truist's final argument requesting the Court strike Plaintiffs' jury demand is misplaced in this motion to dismiss. Truist claims that Plaintiffs' jury demand must be stricken under the agreements. While the Seventh Amendment protects a fundamental right to jury trials, a party may contractually waive its right to a jury. *See Jacob v. City of New York*, 315 U.S. 752, 752-53 (1942); *Brookhart v. Janis*, 384 U.S. 1, 4 (1966); *Burns v. Lawther*, 53 F.3d 1237, 1240 (11th Cir. 1995). Determining whether Plaintiffs waived their jury trial right requires the Court to decide the waiver was made knowingly, intentionally, and voluntary. *Aponte v. Brown & Brown of Fla.*,

12

*Inc.*, 806 F. App'x 824, 827 (11th Cir. 2020). And, as already discussed, Plaintiffs contest the validity of the agreements Truist attaches to its motion to dismiss. The Court will deny Truist's motion to strike within its motion to dismiss without prejudice for Truist to refile the motion to strike separately.

Accordingly, it is now

**ORDERED:**

Defendant's Amended Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 37) is **DENIED**. To the extent Defendant incorporates a motion to strike Plaintiffs' jury demand into its Motion to Dismiss, the motion to strike is denied without prejudice and may be refiled as its own motion. Defendant must answer the Amended Complaint (Doc. 34) **on or before September 25, 2023**.

**DONE** and **ORDERED** in Fort Myers, Florida on September 11, 2023.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

13