UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Fort Myers Division

CASE NO.: 2:23-cv-00040-SPC-KCD

LINDA KAZAK and KAZAK REAL
ESTATE, LLC d/b/a KAZAK REAL
ESTATE,

      Plaintiffs,

v.

TRUIST BANK f/k/a BRANCH
BANKING AND TRUST COMPANY,

      Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, TRUIST BANK f/k/a BRANCH BANKING AND TRUST COMPANY ("TRUIST"), by and through undersigned counsel and submits this motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure with respect to the claims of Plaintiffs, LINDA KAZAK ("Ms. Kazak") and KAZAK REAL ESTATE, LLC d/b/a KAZAK REAL ESTATE (collectively "Plaintiffs") and states:

## INTRODUCTION

In the Amended Complaint, Plaintiffs allege that Truist is liable for several wire transfers from the account of Kazak Real Estate at Truist (henceforth the

"Wire Transfers"). *See generally,* DE 26. The Declaration of Shelby Peltier ("Ms. Peltier") is attached hereto as **Exhibit A** in support of this motion (hereinafter, "Peltier Dec."). Truist also relies upon Plaintiffs' verified interrogatory responses, attached hereto as **Exhibit B** and the expert opinion of Gregory Litster, attached hereto as **Exhibit C** ("Litster Report")**.** Finally, Truist relies upon the Declaration of Timothy Frydrych that is attached to Truist's Amended Motion to Strike the Plaintiff's Jury Demand and attached hereto as **Exhibit D** (hereinafter, "Frydrych Dec."). [*See* DE 67].  Contemporaneously herewith, Truist has filed its statement of undisputed facts. Together, this summary judgment record demonstrates the absence of a genuine issue of material fact with respect to each and every claim raised by Plaintiffs. Truist therefore moves the Court for summary judgment in favor of Truist on all counts of the Amended Complaint.

## ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

### A.  Plaintiffs' Claims Are Barred By Their Contracts With Truist.

"The relationship between a bank and its account holder is contractual." *See Carl v. Republic Security Bank*, 282 F. Supp. 2d 1358, 1372 (S.D. Fla. 2003).  As set forth in the Declarations of Shelby Peltier and Timothy Frydrych, both Ms. Kazak personally, and Kazak Real Estate as an enterprise, had contractual agreements with Truist governing the use of the Accounts. *See* Peltier Dec. ¶ 12 and Exs. 3-A and 3-B thereto; Frydrych Dec. ¶¶ 8–37 and Exs. 1–22 thereto.  In the case of Ms.

Kazak, the agreement was the Bank Services Agreement ("BSA") and Online and Mobile Banking Agreement ("OMBSA"), while in the case of Kazak Real Estate the agreement was the Commercial Bank Services Agreement ("CBSA") and the Online and Mobile Banking for Business Services Agreement ("OMBBSA"). *See* Peltier Dec. ¶ 12 and Exs. 3-A and 3-B thereto; Frydrych Dec. ¶¶ 8–37 and Exs. 1–22 thereto.  Together the BSA, CBSA, OMBSA and OMBBSA are referred to herein as the "Agreements".  As set forth in greater detail below, Plaintiffs' claims against Truist fail due to the express terms of the Agreements, and Truist is therefore entitled to summary judgment.

> **1.    Per the Agreements, Plaintiffs Are Liable for the Wire Transfers Because They Were Made Using Plaintiffs' Username, Password, and Onetime Passcodes.**

In the Agreements, Plaintiffs agreed that they would be bound by any transaction conducted using Plaintiffs' name, account number and security code, whether or not it was actually authorized, and that Truist would not be liable for such transactions. Specifically, both the BSA and CBSA provide:

> You acknowledge that the Bank has no method to determine whether a transaction conducted with use of a valid name, account number, and security code or personal identification was proper, and therefore authorize the Bank to complete any transaction involving your account made with the use of such information. Subject to applicable law, you agree to be responsible for any transaction initiated with the use of a valid name, account number, security code, or personal identification, and agree that the Bank shall have no liability for any loss, claim, or damage you sustain as a result of the

> use of your security code or personal information described above whether such transaction was authorized or not.
>
> …
>
> AUTHORIZATION OF TRANSFERS. You authorize the Bank to make transfers of funds from time to time from any deposit or credit account upon instruction of any individual using a correct account name, account number, security code, confidential identification number, or other information the Bank has on file about you, your account or any other authorized signer on your account, and whether given orally, by telephone, in person, in writing, through an ATM, point-of-sale terminal, or any other method. Any such transfers may also be governed by separate agreement with the Bank pertaining to such services. You acknowledge that the Bank has no method to determine whether a transaction conducted with the use of a valid account name, account number security code or other information which the Bank has on file about you or your account was proper and therefore authorize the Bank to complete any such transaction in which the Bank receives such identifying information

Ex. 8 to Frydrych Dec. at 20 ¶ 4, 26 ¶ 15; Ex. 9 to Frydrych Dec. at 19 ¶ 4, 25 ¶ 15.

Likewise, the Online and Mobile Banking for Business Agreement ("OMBBSA")

provides that:

> We: (i) will allow any person using your Security Procedures to access and use the Service; and (ii) may accept information from, provide information to, and rely upon, act on and follow any instructions from any person using your Security Procedures, and such instructions will be deemed effective as your instructions. Our records regarding the Security Procedures used to access the Service will be deemed conclusive and binding upon you, absent manifest error. If an unauthorized person obtains access to the Service through the use of your Security Procedures, we will not be liable to you or any other person for permitting such access or for receiving information from, providing information to or relying upon, acting on or following instructions from such person (including, without limitation, instructions resulting in the

> loss of funds), unless you provided adequate prior notice to
> us of the actual or suspected loss or theft of or unauthorized
> access to your Security Procedures or we otherwise had actual
> prior knowledge thereof, or unless the facts of the situation
> otherwise show we did not act in good faith.

Ex. 3-B to Peltier Dec. at 8 ¶ 3(e). All the Wire Transfers used the Plaintiffs' valid username, password and one time passcodes. *See* Peltier Dec. ¶¶ 13–23. Plaintiff did not report the Wire Transfers as fraudulent until after they had been completed. *See* Peltier Dec. ¶¶ 24–26, 28. Therefore, Plaintiffs cannot seek to shift responsibility for the Wire Transfers to Truist, and any contrary interpretation is counter to the express terms of the Agreements.

Courts have regularly granted summary judgment in favor of banks due to similar provisions in retail and commercial bank agreements in cases with facts indistinguishable from this case. *See e.g. Regions Bank, etc. v. Kaplan, 8*:12-CV-1837-T-17MAP, 2016 WL 1592752, at *19 (M.D. Fla. Apr. 18, 2016), *aff'd sub nom. Regions Bank v. Kaplan,* 17-15478, 2021 WL 4852268 (11th Cir. Oct. 19, 2021) (granting summary judgment on breach of contract claim based on similar contractual provision); *Envision Healthcare, Inc. v. Fed. Deposit Ins. Corp.*, 11 CV 6933, 2014 WL 6819991, at *5 (N.D. Ill. Dec. 3, 2014) (granting summary judgment in favor of bank with respect to breach of contract, breach of implied duty of good faith and fair dealing, and negligence cause of action for purportedly unauthorized wire transfer based on similar contractual provision). This Court should likewise enter

summary judgment in favor of Truist because the Agreements provide that Plaintiffs will bear the risk for the Wire Transfers.

> **2.     Per the Agreements, Truist Can Only Be Liable to Plaintiff for Gross Negligence, Wantonness, and Intentional Misconduct.**

Plaintiffs' claims are also inconsistent with the express terms of the Agreements that limit Truist's liability. *See* Ex. 8 to Frydrych Dec. at 26 ¶ 12(c) and Ex. 9 to Frydrych Dec. at 25 ¶ 12(c) (providing that Truist "shall only be liable for your damages, as provided in this Section, caused by our gross negligence or wanton and intentional misconduct."). Courts have held that such provisions in bank agreements are enforceable and serve to cabin the bank's liability to causes of action that satisfy the limitations on liability set forth in the agreement, i.e. breaches of contract or torts that are the product of gross negligence, wantonness or intentional misconduct. *See Sentinel Capital Orlando, LLC v. Centennial Bank*, 612CV785ORL40GJK, 2015 WL 5916859, at *5 footnote 10 (M.D. Fla. Oct. 1, 2015), aff'd on other grounds, 676 Fed. Appx. 910 (11th Cir. 2017) ("Even clauses limiting liability for breaches arising from gross negligence and willful misconduct are enforceable." citing *Chem. Bank v. Sec. Pac. Nat. Bank*, 20 F.3d 375, 377 (9th Cir. 1994)); *Fla. Fire Chief's Ass'n, Inc. v. Truist Bank,* 23-cv-00203-AW-MJF (N.D. Fla. May 13, 2024) (dismissing simple negligence claim against Truist based on the limitations of liability contained in Truist CBSA); *Firstar Metro. Bank & Tr. v. F.D.I.C.*, 964 F. Supp. 1353, 1356 (D. Ariz. 1997) (granting defense summary

judgment, in part, based on the holding in Chemical Bank and enforcing limitation on liability clause in bank agreement). Such clauses do not create or permit a claim sounding in simple breach of contract, negligence, or breach of fiduciary duty. *See Envison Healthcare Inc. v. Fed'l Deposit Ins. Corp.*, 11-cv-6933, 2014 WL 6819991, *8 (N.D. Ill. December 3, 2014). Since Plaintiffs do not allege that Truist's conduct was grossly negligent, wanton, or intentional, the Court should enter summary judgment in favor of Truist based on the limitations on liability found in the Agreements.

### 3.      Per the Agreements, Truist is Not Liable for Plaintiffs' Consequential Damages.

Plaintiffs' claims for consequential damages are barred by the express terms of their Agreements.  The Amended Complaint alleges that Plaintiffs' damages include "loss of business[] and loss of business opportunities." *See e.g.* DE 34 ¶ 160. However, both the CBSA and BSA provide that, "[i]n no event will the Bank be liable for special or consequential damages" and as such Truist is not liable for any loss of business or business opportunities. *See* Ex. 8 to Frydrych Dec. at 22; Ex. 9 to Frydrych Dec. at 21. Such contractual limitations on the recovery of consequential damages are also generally enforceable. *See e.g. Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*, 193 F. Supp. 3d 1294, 1309 (S.D. Fla. 2016) (enforcing limitation against consequential damages contained in bank agreement). Lost profits and lost business opportunities are generally a type of consequential damages. *See e.g. Local*

*Access, LLC v. Peerless Network, Inc.*, 6:17-CV-236-WWB-EJK, 2023 WL 8701190, at

*4 (M.D. Fla. Dec. 15, 2023).  Thus, Plaintiffs' claims for consequential damages,

including lost business and lost business opportunities, are prohibited by the

Agreements and Truist is entitled to summary judgment.

**B.      Truist Did Not Breach Its Agreements With Plaintiffs.**

The summary judgment record shows that Truist did not breach the

Agreements.  In the Amended Complaint, Plaintiffs allege that Truist breached a

contract by failing to cancel or refund the Wire Transfers.  *See* DE 34 ¶¶ 64–68.

However, the Agreements contain no requirement to cancel or refund Wire

Transfers. *See generally* Exs. 8 and 9 to Frydrych Dec. Nor was it possible for Truist

to "cancel" the Wire Transfers because Ms. Kazak did not notify Truist of her

desire to cancel the Wire Transfers until after they were completed. *See* Peltier Dec.

¶ 28; *see also* Litster Report at 14–16.  Thus, Truist did not breach a contract with

Plaintiffs by not refunding or canceling the Wire Transfers.

In discovery, Defendants were unable to identify any provision of the

Agreements that correspond to the allegations of the Amended Complaint. When

asked in interrogatories to identify each breach of contract by Truist, Plaintiffs

responded "when Truist employees promised me that actions had been taken, and

they were not in fact taken, I submit that the same amounts to a violation of the

obligations to me under my account agreement." *See* Ex. B at 8–9.  However, a

gratuitous promise that is not made pursuant to a bargained-for exchange of promises between parties is unenforceable and cannot sustain a contract. *See In re Fidelity Standard Mortgage Corp. v. Beck*, 36 B.R. 496 (S.D. Fla. 1983) (agreement to reassign mortgage was gratuitous and unenforceable), *aff'd* 839 F.2d 1517 (11th Cir. 1988); *Gent Row, LLC v. Truist Bank*, 9:22-CV-80684-WPD, 2024 WL 808029, at *5 (S.D. Fla. Jan. 16, 2024) (refusing to imply a contract from words and conduct where parties had written agreement). Thus, any alleged statements by Truist that it would take further action were gratuitous and did not form a contract.

Furthermore, the summary judgment evidence shows that Truist complied with Ms. Kazak's requests. *See* Peltier Dec. ¶¶ 27, 39. Truist did lock the account and did report the transactions to its fraud department. *See id.* While Truist could not possibly cancel the Wire Transfers as Ms. Kazak requested, it did issue wire recalls. *See* Peltier Dec. ¶¶ 28, 35, 40; *id.* Ex. 6. Therefore, there is no genuine issue of material fact that Truist satisfied its obligations to Plaintiffs under the Agreements and did not breach a contract.

## C. Truist Did Not Breach the Duty of Good Faith and Fair Dealing.

Since Truist did not breach a contract, Truist likewise did not breach any implied duty of good faith and fair dealing. "Florida follows the majority view that 'there can be no independent cause of action brought for breach of the covenant of good faith and fair dealing.'" *Share v. Broken Sound Club, Inc.*, 312 So.

3d 962, 969–70 (Fla. 4th DCA 2021) (quoting Williston on Contracts at § 63:22). Rather, a breach of that covenant must be tied to the "performance of an express term of the contract." *Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998). The implied duty of good faith "is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." *Id.* As such, since Truist did not breach a contract, and complied with the Agreements, Truist did not breach any implied duty of good faith and fair dealing.

### D.    Plaintiffs' Claims Are Barred by the Independent Tort Doctrine.

Plaintiffs' claims are barred by Florida's Independent Tort Doctrine. While Florida law limits the application of the economic loss rule to the products liability context, *see Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Co., Inc.*, 110 So.3d 399, 407 (Fla. 2013), the Eleventh Circuit has recognized that the Florida Supreme Court "left intact a separate hurdle, namely that 'a party still must demonstrate that ... the tort is independent of any breach of contract claim.'" *Lamm*, 749 F.3d at 947 (quoting *Tiara*, 110 So. 3d at 408 (Pariente, J., concurring)). Thus, the so-called "Independent Tort Doctrine" precludes a plaintiff from "circumvent[ing] the contractual relationship by bringing an action in tort." *Merchant One, Inc. v. TLO, Inc.*, No. 19-cv-23719-BLOOM, at *4 (S.D. Fla. Jan. 16, 2020).

In this case, Plaintiffs' claims against Truist are barred by the Independent Tort Doctrine because the Agreements provide that Truist is not liable for the Wire Transfers. *See* Exs. 8 and 9 to Frydrych Dec. Specifically, Plaintiffs and Truist have a written agreement regarding who would be responsible for unauthorized transactions that utilize Plaintiffs' username, password and onetime passcodes. *See* Frydrych Dec. ¶¶ 8–37; *id.* Ex. 8 at 20 ¶ 4, 26 ¶ 15; *id.* Ex. 9 at 19 ¶ 4, 25 ¶ 15. Therefore, the Independent Tort Doctrine prevents Plaintiffs from seeking to circumvent the Agreements by bringing claims in tort. *See Pastor v. Bank of Am., N.A.*, 22-24121-CIV, 2023 WL 2646817, at *2 (S.D. Fla. Mar. 27, 2023) (negligence claim based on banks supposed "a duty of care to safeguard, manage, monitor, maintain, supervise and control [customer's] life's savings account" is subject to dismissal based on the preclusive effect of the Independent Tort Doctrine).

### E.    Plaintiff's Common Law Claims are Preempted by the U.C.C.

All of Plaintiffs' common law claims are preempted by Article 4A of the U.C.C. Truist's responsibilities pertaining to wire transfers are governed by Florida's Uniform Commercial Code ("UCC") Article 4A. *See* Fla. Stat. §§ 674.101, *et seq*. "The rules that emerged during the drafting of the U.C.C. 'are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article.'" *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274 (11th Cir. 2003) (quoting

U.C.C. 4A-102 cmt) (emphasis in original). Thus, "'[p]arties whose conflict arises out of a funds transfer should look first and foremost to Article 4A for guidance in bringing and resolving their claims.'" *Id.* (quoting *Sheerbonnet, Ltd. v. Am. Express Bank, Ltd.*, 951 F. Supp. 403, 407 (S.D.N.Y. 1995)). Importantly, a plaintiff "may not resort to the common law in order to create rights, duties and liabilities that are inconsistent with those contained in the Article." *Anderson v. Branch Banking & Tr. Co.*, 56 F. Supp. 3d 1345, 1351 (S.D. Fla. 2014). "To impose additional duties on the banks at all related to the wire transfers would be inconsistent with the text of the U.C.C." *Zeal Glob. Services Private Ltd. v. SunTrust Bank*, 508 F. Supp. 3d 1303, 1311 (N.D. Ga. 2020).

Article 4A of the U.C.C., covers liability for wire transfers like those at issue in this case. *See* Fla. Stat. § 670.202(2). Thus, the U.C.C. is the exclusive remedy governing a bank's liability for allegedly unauthorized wire transfers, and claims resting on allegations of a bank's alleged duty to prevent or refund such transfers are preempted. *See Corfan Banco Asuncion Paraguay v. Ocean Bank*, 715 So. 2d 967, 971 (Fla. 3d DCA 6/10/1998 (dismissing negligence claims based on an alleged "duty of care to follow the accepted banking practice of the community, and to return the funds from the . . . transfer" because the duty "is exactly the same duty established and governed by the statute"); *Ma. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 90 (2d Cir. 2010) (finding that plaintiff's claims for

conversion and breach of fiduciary duty were preempted by the U.C.C.); *Capten Trading Ltd. v. Banco Santander International*, 2018 WL 1558272, at *3 (S.D. Fla. Mar. 29, 2018) (finding that plaintiff's common law claims for negligence, breach of contract, and breach of fiduciary duty were based on fraudulent wire transfers and were therefore preempted by 4A).

Plaintiffs' common law claims rely on allegations that Truist lacked commercially reasonable security procedures to prevent unauthorized wire transfers. *See* DE 34 ¶ 58. As this Court has already recognized, such claims fall directly within the purview of Article 4A, and are therefore preempted. *See* DE 41 ("With only this, Kazak's common law claims would be preempted under the UCC.")

Plaintiffs may contend that some of their claims deal with what happened before, or after, the Wire Tranfers, and that such claims are not preempted, but this reads the preemptive reach of Article 4A too narrowly. *See Zeal Glob. Services Private Ltd. v. SunTrust Bank*, 508 F. Supp. 3d 1303, 1312 (N.D. Ga. 2020) (dismissing claims as preempted, even though some of the allegations dealt with conduct after the wire transfer at issue, because "the Court finds that at bottom the essence of Zeal's claims, and all the harm it alleges, arises out of and flows through the fraudulent wire transfers.") (internal quotation marks omitted). Furthermore, even if the Court were to find some aspects of Plaintiffs' claims are outside the

scope of Article 4A, that does not render those portions that are squarely within the scope of Article 4A any less preempted.

Earlier in this case, the Court denied Truist's Motion to Dismiss asserting preemption on the basis that Plaintiff's claims about Truist's alleged failure to cancel or recall the Wire Transfers could plausibly state a claim that is not preempted by the U.C.C. *See* DE 41. However, the Court recognized that, "[a]t a later dispositive motion stage, with the benefit of a more developed record, the uncontested facts may support preemption." *Id.*   As the Court thought it might, a review of the summary judgment record shows that the remainder of Plaintiffs' common claims are indeed preempted.

In *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793 (2d Cir. 2011), the Second Circuit analyzed whether or not a claim that Citibank's alleged fifteen hour delay in issuing a wire transfer recall request constituted negligence. Citibank asserted that any such claim was preempted by the U.C.C.  *See id.*  The Second Circuit agreed with Citibank, and held that such a claim was preempted because the account holder's request to cancel or recall the wire transfer was untimely under the U.C.C. because the request to cancel or recall the wire transfer occurred after the wire transfer was complete. *Id.* at 803 ("Again, as the district court properly found, the critical question in terms of timing is when Citibank executed the wire transfer requests, as set forth in § 4–A–209(1).")

As in the *Fischer* case, Plaintiffs also submitted their cancellation request after the Wire Transfers were complete. *See* Peltier Dec. ¶ 28. Florida's codification of Article 4A contains the same U.C.C. provision regarding the appropriate timing of requests to cancel a payment order, such as a wire transfer. *See* Fla. Stat. § 670.211 ("After a payment order has been accepted, cancellation or amendment of the order is not effective unless the receiving bank agrees or a funds-transfer system rule allows cancellation or amendment without agreement of the bank."). Thus, Plaintiffs' attempt to impose liability on Truist for supposedly failing to cancel or recall a wire transfer under theories like negligence or breach of fiduciary duty, when such a request was untimely according to Article 4A, is preempted. *See Fischer*, 632 F.3d at 803; *Langston & Langston, PLLC v. SunTrust Bank*, 480 F. Supp. 3d 737, 744 (S.D. Miss. 2020) (holding that "negligence claims regarding any duty SunTrust may have had with respect to (1) rejecting a misdescribed wire transfer, (2) immediately freezing funds, or (3) returning funds as a result of the cancellation request are displaced by UCC § 4A-211."). "To hold otherwise would have the effect of creating a 'buyer's remorse' basis for cancellation of wire transfers at any time after execution, which would be inconsistent with the goals of Article 4-A because it would lead to tremendous uncertainty by undermining the finality of financial transactions." *Jajati v. JPMorgan Chase Bank, N.A.*, 22-CV-07676 (HG), 2024 WL 99659, at *5 (E.D.N.Y. Jan. 9, 2024).

**F.     Truist is Entitled to Summary Judgment on the Negligence Claim.**

**1.     Plaintiffs' Claims Are Not Based on a Duty in Negligence.**

Plaintiffs have not identified a valid duty in negligence regarding the Wire Transfers or the Plaintiffs' cancellation requests. The Amended Complaint states that Truist had a duty to act "with due care" regarding Plaintiff's requests to terminate the Wire Transfers and protect her account. DE 34 ¶¶ 122–123. The Eleventh Circuit was presented with a similar argument when a bank customer brought a negligence case claiming a bank had a duty to exercise "due care and diligence" when sending, cancelling or seeking to recall wire transfers. *See Kalpakchian v. Bank of Am. Corp.*, 832 Fed. Appx. 579 (11th Cir. 2020). The Eleventh Circuit held that there is no such "independent duty". *Id.* at 585. Instead, the Eleventh Circuit affirmed the dismissal of the plaintiff's negligence claim and held that such a "negligence claim is purely contractual." *Id.*   Therefore, Truist is entitled to summary judgment based on the absence of a duty in negligence.

**2.     Truist Breached No Negligence Duty to Plaintiffs.**

Assuming, *arguendo*, that Plaintiffs can establish some independent duty, the summary judgment record is clear that Truist breached no duty to Plaintiffs and acted reasonably. Truist acted in good faith based on payment instructions that were authenticated using Plaintiffs' username, password, and one-time passcodes. *See* Peltier Dec. ¶¶ 13–23.  Plaintiffs' provided notice to Truist too late

to terminate the Wire Transfers, but Truist did block the account from any further transfers and issued recall requests for the Wire Transfers. *See* Peltier Dec. ¶¶ 27, 28, 40; *id.* Exs. 4–6.  Plaintiffs have presented no evidence that more was required from Truist under negligence principals.

### G.    Truist is Entitled to Summary Judgment on Plaintiffs Claim for Breach of Fiduciary Duty.

#### 1.    Truist Was Not Plaintiffs' Fiduciary.

Generally, "the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities" and "a fiduciary relationship between a bank and a customer is the exception, not the rule." *See Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994); *see also Lamm v. State Street Bank & Trust Co.*, 889 F.Supp.2d 1321 (S.D. Fla. 2012) ("Under Florida law, banks ordinarily do not owe fiduciary duties to their customers."). Plaintiffs even agreed that, "You acknowledge and agree that the relationship between you and the Bank created by the opening of an account is of debtor and creditor and that the Bank is not in any way acting as a fiduciary for you or for your benefit and that no special relationship exists between you and the Bank." *See* Ex. 8 to Frydrych Dec. at 1 ¶ A; Ex. 9 to Frydrych Dec. at 1 ¶ A.

Plaintiffs may argue that this aspect of the Agreement was modified by virtue of a course of conduct that implied a fiduciary duty. However, "one may

not unilaterally impose a fiduciary responsibility on another simply by reposing trust; absent some conscious acceptance of such duties, no fiduciary relationship is created." *Suzmar, LLC v. First Nat'l Bank of S. Miami*, 48 Fla. L. Weekly D1745, --- So. 3d --- (Fla. 3d DCA Aug. 30, 2023). The Agreement provides that it can only be modified with a written notification of change by Truist. *See* Ex. 8 to Frydrych Dec. at 1 ¶ A; Ex. 9 to Frydrych Dec. at 1 ¶ A. There is no evidence that Truist consciously took up the mantle of a fiduciary, or agreed to do so in writing, especially where it disclaimed any such relationship in contracts with Plaintiffs.

### 2.      Truist Breached No Fiduciary Duty to Plaintiffs.

Truist engaged in no conduct that breached a fiduciary duty to Plaintiff. The evidence establishes that, contrary to the allegations of the Complaint, Truist locked Plaintiffs' accounts upon receipt of Ms. Kazak's request. *See* Peltier Dec. ¶ 27. However, Plaintiffs disputed the Wire Transfers only after the Wire Transfers were completed and as such, they could not be terminated. *See* Peltier Dec. ¶ 28. Truist did asked for a recall of the Wire Transfers, but many of the Wire Transfers were not returned. *See* Peltier Dec. ¶ 40. In discovery, Truist asked Plaintiffs to expound on what conduct, if any, they contend breached Truist's supposed fiduciary duty to Plaintiffs did not identify any breach of fiduciary duty, and only asserted that certain conduct breached a duty that Truist allegedly owed to Plaintiffs in negligence. *See* Ex. B at 9–10. Thus, there is no genuine issue of

material fact that Truist breached no fiduciary duty to Plaintiffs, and the Court should enter summary judgment in favor of Truist.

**H.      There is Insufficient Evidence of Causation.**

In denying Truist's Motion to Dismiss, the Court relied upon that Plaintiffs' allegations that Ms. Kazak told Truist about the Wire Transfers "at a time when the accounts could be frozen and the fraudulent wire transfers could be terminated/recaptured." DE 43.  However, the evidence shows that Ms. Kazak did not provide Truist notice at a time when the wire transfers could be terminated or recaptured. *See* Peltier Dec. ¶ 28.  Furthermore, Truist's expert has opined that any suggestion by Plaintiffs that additional funds could have been recovered after the completion of the Wire Transfers is pure conjecture. *See* Litster Report at 14–16. A plaintiff does not "sustain this burden of proof by relying on pure speculation." *Prieto v. Total Renal Care, Inc.*, 843 Fed. Appx. 218, 224 (11th Cir. 2021) (citing *Cox v. St. Josephs Hosp*. 71 So. 3d 795, 799 (Fla. 2011)); *see also Hessen for Use & Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 647 (11th Cir. 1990) ("Florida has adopted a preponderance standard for causation . . . a mere possibility of causation is not enough.").  Therefore, Truist is entitled to summary judgment on causation because the evidence is insufficient to establish causation for Plaintiffs' injury.

## I.     Truist is Entitled to Summary Judgment on the U.C.C. Claims.

Under Article 4A, "[i]f a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure"—as was done here—"a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if the security procedure is a commercially reasonable method of providing security against unauthorized payment orders." Fla. Stat. § 670.202(2). The bank must "prove[ ] that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer." *Id*. Section 670.201 defines security procedure as a "procedure established by agreement of a customer and a receiving bank for the purpose of: (1) Verifying that a payment order or communication amending or canceling a payment order is that of the customer; or (2) Detecting error in the transmission or the content of the payment order or communication."

### 1.     The Agreed Upon Security Procedure Was a Username, Password and Dual-Factor Authentication.

The contracts between Plaintiffs and Truist provide for the use of a username, password, and dual factor authentication using onetime passcodes to secure Plaintiffs' accounts.  *See* Ex. 3-A to Peltier Dec. ("OMBSA") at 10; Ex. 3-B to Peltier Dec. ("OMBBSA") at 7–8.  These agreements, as well as the Commercial

Bank Services Agreement ("CBSA") and Bank Services Agreement ("BSA") provide that Truist will <u>not</u> be liable for any transaction authenticated with Plaintiffs username, password and onetime passcode. *See* Ex. 3-A to Peltier Dec. at 10; Ex. 3-B to Peltier Dec. at 7–8; Ex. 8 to Frydrych Dec. ("BSA") at 20; Ex. 9 to Frydrych Dec. ("CBSA") at 6–7. Thus, the security procedures agreed upon were a username, password, and dual factor authentication using onetime passcodes.

### 2. The Security Procedure Was Commercially Reasonable.

The commercial reasonableness of a bank's security procedure under the UCC "is a question of law to be determined by considering" a number of factors, including without limitation: "the wishes of the customer expressed to the bank; the circumstances of the customer known to the bank, including the size, type, and frequency of payment orders normally issued by the customer to the bank; alternative security procedures offered to the customer; and security procedures in general use by customers and receiving banks similarly situated." Fla. Stat. § 670.202(3). The commercial reasonableness standard is designed "to encourage banks to institute reasonable safeguards against fraud but not to make them insurers against fraud." Fla. Stat. § 670.203 cmt. 4. "A security procedure is not commercially unreasonable simply because another procedure might have been better or because the judge deciding the question would have opted for a more stringent procedure." *Id*. "The standard is not whether the security procedure is

the best available. Rather it is whether the procedure is reasonable for the particular customer and the particular bank, which is a lower standard." *Id*.

The use of one time passcodes for online authentication purposes has been endorsed and recommended by the Federal Financial Institutions Examination Council ("FFIEC"), the Federal Bureau of Investigation (FBI), the Association for Financial Professions ("AFP"), and many other organizations. *See* Litster Report at 8–10. Additionally, the FFIEC's 2005 report (the "2005 Guidance")[1] provides applicable standards of commercial reasonableness. *See Choice Escrow and Land Title, LLC v. BancorpSouth Bank*, 754 F.3d 611, 619-620 (8th Cir. 2014) (relying on the FFIEC's Guidance). The 2005 Guidance recommends financial institutions implements security procedures that use two or more of the following factors in combination: (1) something the user knows, like a password or PIN; (2) something the user has; and (3) something the user is, like a person with a unique fingerprint or biometric characteristic. In a 2016 handbook, the FFIEC again recommended banks require multi-factor authentication including the use of one time passcodes.[2]

Here, the agreed security procedures implemented multi-factor authentication and required the user to: (1) login to the Truist Online and Mobile

---

[1] Fed. Fin. Insts. Examination Council, *Authentication in an Internet Banking Environment* (Oct. 12, 2005) https://www.ffiec.gov/pdf/authentication_guidance.pdf.

[2] Fed. Fin. Insts. Examination Council, *IT Exam Handbook* (Sept. 2016), at p. 33 n.41, and p. 37, https://www.ffiec.gov/press/PDF/FFIEC_IT_Handbook_Inform ation_Security_Booklet.pdf.

Banking platform with a user name and password the user knows (i.e. something the user knows), and (2) use a onetime pass code delivered via an electronic device the user has (i.e. something the user has) to complete the transaction. *See* Peltier Dec. ¶ 13.  Numerous courts have held that, generally, two factor authentication is a commercially reasonable security procedure for purposes of Article 4A. *See e.g. Essgeekay Corp. v. TD Bank, N.A.*, CV183663ESCLW, 2018 WL 6716830, at *4 (D.N.J. Dec. 19, 2018) (holding "the Court finds for purposes of the current motion that, as alleged by the Complaint, TD's implemented two-factor authentication procedure is commercially reasonable."); *Fed. Ins. Co. v. Benchmark Bank*, 2:17-CV-135, 2020 WL 635654, at *10 (S.D. Ohio Feb. 11, 2020) (observing, "the Eighth Circuit held that a dual authorization system constituted a commercially reasonable security procedure because it added another layer of protection to a single level of authorization, such as a unique username and password.")

To complete the analysis, the Court must decide, as a matter of law, "whether the procedures were reasonable as applied to the [Plaintiffs]—not whether the security procedures are commercially reasonable in the abstract." *Rodriguez v. Branch Banking & Tr. Co.*, 46 F.4th 1247, 1259 (11th Cir. 2022).  Whether a security procedure is commercially reasonable turns on the circumstances of the customer "as known to the bank." *Id.* (citing Fla. Stat. § 670.201 & cmt).  "It is not *per se* commercially unreasonable for a bank to use a single effective and versatile

security protocol for the majority of its customers and depart from the protocol only when necessary." *Benchmark Bank*, 2020 WL 635654, at *11. The information known to Truist did not suggest that additional security procedures were necessary to maintain commercially reasonable security for Plaintiffs' accounts. *See* Peltier Dec. ¶ 15; Litster Report at 10. Accordingly, there is no genuine issue of material fact whether the security procedures were commercially reasonable.

### 3.   Truist Complied with Security Procedures in Good Faith

Truist's execution of the payment orders was done in good faith. Article 4A defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." Fla. Stat. § 670.105(1)(f); *see also* Fla. Stat. 671.201(20) (defining "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing"). In order to prove that there was a lack of good faith, a party must show an "unfair or dishonest manner, rather than in a negligent manner." *See Wachovia Bank, N.A. v. Federal Reserve Bank of Richmond*, 338 F.3d 318, 323 (4th Cir. 2003). Where "a bank's security procedures do not depend on the judgment or discretion of its employees, the scope of the good-faith inquiry under Article 4A is correspondingly narrow." *Choice Escrow*, 754 F.3d at 623.  In this case, Truist's automated systems relied on the user name, password, and one-time pass codes of Plaintiffs to authenticate the Wire Transfers. *See* Peltier Dec. ¶¶ 16–23; *id.* Ex. 4. Because the two-factor authentication was

successful, Truist's acted in good faith. *See* Peltier Dec. ¶¶ 16–23; *id.* Ex. 4; Litster Report at 11–14. There is no evidence that Truist knew the Wire Transfers were unauthorized. *See* Litster Report at 11–14. Therefore, Truist is entitled to summary judgment under Section 670.202(b).

<u>CONCLUSION</u>

For the reasons set forth above, Truist is entitled to summary judgment with respect to each of Plaintiffs claims against Trust.

WHEREFORE, Truist requests the Court enter summary judgment in favor of Truist with respect to all counts of the Amended Complaint [DE 34].

DATED:  May 15, 2024.

/s/ Nicholas S. Agnello
Nicholas S. Agnello, Esq. (FL Bar No. 90844)
BURR & FORMAN LLP
350 East Las Olas Blvd., Suite 1440
Ft. Lauderdale, FL 33301
Telephone: (954) 414-6200
Facsimile: (954) 414-6201
Email: nagnello@burr.com
Email: rzamora@burr.com
Email: FLService@burr.com
*Counsel for Defendant* TRUIST BANK

<u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on May 15, 2024, I filed the foregoing using CM/ECF, which serves a copy via Notice of Electronic Filing upon all parties.

/s/ Nicholas S. Agnello
Nicholas S. Agnello, Esq. (FL Bar No. 90844)
BURR & FORMAN LLP